H. F. CORBIN et al. *vs.* PETER A. HOULEHAN.

Kennebec.    Opinion June 19, 1905.

*Intoxicating Liquors.   Constitutional Law.   Interstate Commerce.   Contracts Valid Where Made.   Enforcement of Same in Another State.   Sale.   Action for Price. Illegal Purpose.   Knowledge of, Vendor.   Foreign Laws.   Recognition of Same.   Comity of Nations.   Obligation of Contracts.—R. S. (1883), c. 27, § 56.   R. S. 1903, c. 29, § 64. XIV Amendment U. S. Constitution.*

The statute, R. S., c. 29, § 64, which prohibits the maintenance of an action in the courts of this state to recover for intoxicating liquors bought in another state with intention to sell the same in this state in violation of law, is not in violation of that clause of the Federal Constitution which gives Congress the power to regulate commerce between the states.

It is a fundamental and elementary rule of the common law that courts will not enforce illegal contracts, or contracts which are contrary to public policy, or which are in contravention of the positive legislation of the state.   To the general rule that the question whether a contract is a legal or illegal one, is judged by the law of the state or country, in which it was made, and that a contract good where made is good everywhere, there are some exceptions the most important of which is, that where the contract violates the positive legislation or the established public policy of the state of the forum, it will not be enforced in that state, although perfectly valid and legal according to the laws of the state or country where it is made.

Independently of any statute, in accordance with this well settled principle, the courts of a state would not enforce a contract in behalf of a vendor to recover the purchase price of goods sold by him to a vendee, if the vendor

not only had knowledge of the illegal purpose of the purchaser to sell them in violation of the laws of the state to which they were to be transported but, as well, did some act in furtherance of this illegal purpose. A person should not be allowed to resort to the courts of the state to enforce a contract which he had made for the purpose of violating or evading the laws of that state, or by aiding another to violate such laws.

But the question raised by the plaintiffs' exceptions is as to the constitutionality of the statute in question which does not make a participation by the vendor in the purchaser's illegal purpose, or even his knowledge of such purpose, necessary to prevent his resorting to our courts.

The courts recognize the laws of other states and countries pertaining to contracts, and give them force and effect upon the principle of comity, which is the voluntary act of the state or nation by which it is offered, and is inadmissible when contrary to its policy or prejudicial to its interests. The comity of nations, rightly understood, cannot violate, because it is a part of, the law of this and every other civilized country.

It being then, upon the principle of the voluntary act of comity, that contracts valid where made, but invalid in the state of the forum, will be in force in the latter state, if not contrary to the established policy or a positive statute of that state, it is within the discretion of the law making power of the state of the forum to limit the extent to which the principle of comity shall be applicable. And the legislature of the state has the power to say that this principle of comity shall not be extended to a contract the result of which is to give one of the parties thereto the means of violating the laws of the state and its established policy in relation to the sale therein of commodities believed to be prejudicial to the interests of its citizens.

In furtherance of the established policy of this state, as clearly shown by its constitution and the history of its legislation, to prohibit the sale of intoxicating liquors within its limits, this statute was enacted forbidding a remedy in our courts to certain suitors, under the conditions named, even if they were innocent in making the contract of sale which placed in the possession of the purchaser the means of violating our laws. The legal effect of this enactment was simply to limit the application of the principle of comity, and to extend the well established principle that courts will not enforce a contract made by both parties with the view and for the purpose of violating the laws of the state of the forum, to the case of a contract where one of the parties only to it, the purchaser, had that purpose in view. This enactment was within the discretion of the law making power of the state, and is not in violation of the interstate commerce of the Federal Constitution.

The statute in question would undoubtedly have the effect of impairing the obligation of contracts, if it were retroactive in its effect, but it is not. The contract in suit was made in February, 1896, while the statute had been in existence for many years prior to that date. A statute cannot

impair the obligation of a contract, within the meaning of the Constitution, that was made subsequent to the enactment of the statute.

Nor is it in violation of this clause of the Fourteenth Amendment: "Nor shall any state deny any person within its jurisdiction the equal protection of the laws," since by this statute all persons are treated alike. It forbids the maintenance of a suit in the courts of this state, under the conditions named, both by residents and non-residents of the state alike.

*Knowlton* v. *Doherty*, 87 Maine, 518, affirmed.

On exceptions by plaintiffs.                    Overruled.

Assumpsit on account annexed, brought in the Superior Court, Kennebec County, to recover a balance of $256.85, and interest thereon, alleged to be due for intoxicating liquors sold March 19, 1896, by the plaintiffs, then residents of Cincinnati, Ohio, to the defendant then residing in Gardiner, Maine, and shipped the same day by the plaintiffs from their place of business in Cincinnati by rail with continuous waybill to the defendant at Gardiner, where they were received by the defendant from the common carrier in the original packages in which they were shipped. The goods thus sold and shipped consisted of twenty cases of bottled whiskey and five barrels of whiskey in bulk, each case and each barrel constituting a separate package.

Defendant plead the general issue and a brief statement alleging "that the account or claim on which this action is founded is for intoxicating liquor sold in violation of chapter 27 of the Revised Statutes of Maine, or for intoxicating liquor purchased out of the state with intention to sell the same or a part of the same in violation of said chapter."

The case was tried to a jury at the April term, 1902, of said Superior Court. After the evidence was closed, the presiding Justice directed the jury to return a verdict for the defendant which was done.

The plaintiffs excepted to certain rulings made by the presiding Justice during the trial and also to the instructions directing the jury to return a verdict for the defendant.

The material part of the case is sufficiently stated in the opinion.

*A. M. Goddard*, for plaintiffs.

*Beane & Beane*, for defendant.

SITTING: WISWELL, C. J., EMERY, STROUT, SAVAGE, POWERS, PEABODY, JJ.

WISWELL, C. J. In this action, brought by citizens of the state of Ohio against a citizen of this state, in the Superior Court for Kennebec County, the plaintiffs seek to recover the unpaid balance of a bill of over six hundred dollars for a large quantity of intoxicating liquor in barrels and cases, sold by them to the defendant. The order for this liquor was taken by the plaintiffs' representative at the defendant's place of business, sent to the plaintiffs in Ohio, where, after making certain inquiries in regard to the financial responsibility of the defendant, the order was accepted by the plaintiffs and the liquors shipped as directed. The contract for the sale and purchase of these liquors was not finally completed until the order was accepted by the plaintiffs in the state of Ohio, so that it may be assumed that the contract of sale was made in the latter state, where such sale was legal. These liquors were bought by the plaintiffs for the purpose and with the intention of selling them in this state in violation of the laws of the state, and they were subsequently so sold by him, and the plaintiffs when they accepted the order, and thereby completed the contract, not only knew that they were intended for illegal sale, as practically admitted by one of the plaintiffs in his testimony, but also materially aided the defendant in his attempt, apparently successful, to prevent their seizure, by marking the goods, in accordance with a direction of the purchaser contained in the order, in the name of a person other than the purchaser, which name was adopted by him for this purpose, and it was known by the plaintiffs' agent that the name in which the liquors were to be shipped was fictitious and adopted by the defendant for the purpose of avoiding their seizure.

At the trial the defendant interposed the defense that these liquors were bought by the defendant out of the state with the intention of selling them in the state, contrary to our laws, and relied upon the statute, R. S., chap. 29, sec. 64: "No action shall be maintained upon any claim or demand, promissory note or other security, contracted or given for intoxicating liquors sold in violation of this

chapter, or for any such liquors purchased out of the state with intention to sell the same or any part thereof in violation thereof." There being no question as to the fact that the liquors were purchased by the defendant for the purpose of selling them in this state in violation of the provisions of the chapter referred to, the court ordered a verdict for the defendant and the case comes here upon the plaintiffs' exceptions, which it is not necessary to quote, but in which the point is raised that this statute is in violation of the interstate commerce clause of the federal constitution.

The contention of plaintiffs' counsel is that the statute, "is in conflict with the commerce clause of the federal constitution and inoperative, because its obvious purpose and necessary and direct tendency and effect are to regulate, hinder, obstruct, burden, discourage and prevent interstate commerce and interstate commerce contracts which are lawful under the constitution and laws of the United States." His argument, briefly stated, is that this sale of liquors in the state of Ohio was legal, that intoxicating liquors are recognized by federal authority as a legitimate subject of interstate commerce, that one of the essential elements of interstate commerce is the sale of goods in one state to be transported into another, that the very purpose and motive of that branch of commerce which consists in transportation is that other act of commerce which consists in the sale or exchange of the commodities to be transported, and that the effect of the statute under consideration is to regulate, obstruct, burden and discourage such interstate commerce transactions.

There can of course be no question as to the truth of many of the propositions relied upon by counsel for plaintiffs in his argument. Intoxicating liquor is recognized by the federal authority as a legitimate subject of interstate commerce. Commerce among the several states includes not only the transportation of commodities from one state to another, but as well the sale of such commodities in one state to be transported into another. The regulation of commerce between states having been delegated to the federal Congress, no state can interfere therewith, or impose any condition, restrictions or burdens thereon. The state cannot tax interstate purchases or sales, nor the means or instruments of such commerce. The state cannot

make it a criminal offense for any person to solicit or take orders in one state for the sale of liquors in another state, with reason to believe that they are to be illegally sold in the state into which they are to be transported; nor can it prohibit the importation of liquors into the state even if they are intended for illegal sale therein, and such liquors cannot be seized or otherwise interfered with by state authority until the transportation has been entirely concluded. In a word the state can do nothing which will directly interfere with or regulate commerce between the several states of the Union. All of these limitations upon the power of the states are familar, having been declared in the decisions of the Supreme Court of the United States whose interpretation of the meaning of the federal constitution is final.

But we cannot see that these various inhibitions upon the power of the state are especially applicable to a solution of the question here presented, and we do not think that it necessarily follows from them, and from the fact that a state can do nothing to directly interfere with commerce between the states, that its legislature cannot, in the exercise of its police power, or any other of its sovereign powers, in its discretion, enact a law, the practical operation of which may indirectly affect the extent of commercial transactions between the states.

The precise question here is, is it in violation of this clause of the federal constitution, for the legislature of a state to say by enactment that the courts of the state shall not be open to suitors, whether resident or non-resident of the state, to enforce certain contracts which are in violation of the settled policy of the state, or by means of which one of the parties to the contract is to be given the means of violating the laws of the state.

It is a fundamental and elementary rule of the common law that courts will not enforce illegal contracts, or contracts which are contrary to public policy, or which are in contravention of the positive legislation of the state. The general rule undoubtedly is that the validity of the contract, that is, the question whether it is a legal or illegal one, is judged by the law of the state or country in which it was made, and that a contract good where made is good everywhere.

But this rule is subject to some exceptions, one of the most important of which is that where the contract violates the positive legislation of the established public policy of the state of the forum, it will not be enforced in that state, although perfectly valid and legal according to the laws of the state or country where it is made.  This principle is thus stated in Cooley's Constitutional Limitations, page 178: "In the making of contracts, the local law enters into and forms a part of the obligation; and if the contract is valid in the state where it is made, any other state will give remedies for its enforcement, unless according to the standard of such latter state, it is bad for immorality, or is opposed in its provisions to some accepted principles of public policy, or unless its enforcement would be prejudicial to the state or its people."  The same principle was thus clearly stated in *Banchor* v. *Mansel*, 47 Maine, 58: "It is a general principle of law that the validity of a contract is to be determined by the law of the place where it is entered into.  But to this rule there are exceptions.  No nation is bound to enforce contracts injurious to its interests or in fraud of its laws, though made without its jurisdiction and valid when and where made.  .  .  .  No state can be justified in requiring its tribunals to enforce obligations which it holds to be founded in wrong, or which are made elsewhere for the express purpose of evading a prohibition decreed by the law of the country where they are to be performed."  Authorities in support of this principle may be found in the decisions of almost every state in the Union.  They are too numerous to be cited here but some of them will be later herein considered.

Independently of any statute, according to this well settled principle, the courts of a state would not enforce a contract in behalf of a vendor to recover the purchase price of goods sold by him to a vendee, if the vendor not only had knowledge of the illegal purpose of the purchaser to sell them in violation of the laws of the state to which they were to be transported, but as well did some act in furtherance of this illegal purpose.  A person should not and would not be allowed to resort to the courts of a state to enforce a contract which he had made for the purpose of violating or evading the laws of that state, or of aiding another to violate, even if the contract was

recognized as valid by the laws of the state where it was actually entered into. There has been much discussion in the decided cases as to whether mere knowledge upon the part of a vendor of the illegal intention of the vendee, with respect to the use of the goods purchased is sufficient to prevent him from obtaining a remedy in the courts of the state, whose laws the vendee intended to violate by an illegal use of the goods purchased, or whether it was necessary, in order to prevent him from being entitled to a remedy in such courts, that he should have participated in the illegal purpose by aiding and facilitating the purchaser in some way. For a very full discussion of this question, see *Hill* v. *Spear*, 50 N. H. 253, 9 Am. R. 205, wherein the court, after a very full review of many authorities upon the question, decided that it was not sufficient that a vendor living in another state who there sold and delivered intoxicating liquors to a vendee, who resold them in the state of New Hampshire in violation of the laws of that state, had reasonable cause to believe, and did believe, that they were purchased by the vendee with the intention of there reselling them contrary to law, to prevent a recovery of the purchase price in the latter state. See also *Webster* v. *Munger*, 8 Gray, 587. But all courts, so far as we are aware, agree that when the vendor not only had knowledge of the illegal use to which the vendee intended to put the goods purchased, but also in making such sale did some act in furtherance of this illegal purpose, that he cannot resort to the courts of the state which were intended to be violated, to enforce the collection of the purchase price for the goods sold for this illegal purpose.

And the principle goes even further than this; not only will the courts of the state whose laws were to be violated refuse to enforce a contract made under these circumstances, but the courts of the state where the contract was made, and under the laws of which it was a valid and legal one, will not give a remedy to enforce such a contract if it was made with a view to a violation of the laws of another state, and the parties seeking a remedy participated in the illegal purpose of the other party to the contract and did some act in its furtherance. In *Graves* v. *Johnson*, 156 Mass. 211, it was decided that the sale and delivery of liquors in Massachusetts, where such

sale was legal, with a view to their being resold by the purchaser in Maine, in violation of the laws of the latter state, will not sustain an action to recover the purchase price thereof even in the state where the contract of sale was made. In the opinion in that case it is said: " The courts are agreed on the invalidity of a sale when the contract contemplates a design on the part of the purchaser to resell contrary to the laws of a neighboring state, and requires an act on the part of the seller in furtherance of the scheme."

So far, we have considered only the fundamental proposition that, independently of any statute upon the subject forbidding resort to our courts, and upon common law principles, the courts of a state will not enforce a contract made in another state, and valid where made, provided the purpose of both parties to the contract was to violate the laws of the state of the forum, and if the vendor did some act in furtherance of such purpose. In accordance with this principle it might well be held in this case that the plaintiffs would not be entitled to a remedy in our courts, since they not only knew of the illegal design of the purchaser but furthered that design by having the liquors marked in the name of a fictitious consignee to aid the purchaser in the evasion of our laws. But the question presented here by the plaintiff's exceptions is as to the constitutionality of the statute in question which does not make a participation by the vendor in the purchaser's illegal purpose, or even his knowledge of the purchaser's illegal purpose, necessary to prevent his resorting to our courts.

It must be remembered that it is not for us to consider the wisdom, propriety or justice of the act. Upon this question it might be argued that it was unjust and inequitable to prohibit a recovery by a vendor in such a case if he neither participated in the illegal intent of the purchaser nor had any knowledge of such intent. But the only question here is whether this statute is in conflict with the interstate commerce clause of the federal constitution. We do not think that it is. It does not regulate or interfere with interstate commerce. It does not, and of course could not, affect the validity of the contract of sale made in a place where such sale is valid. It does not prohibit or interfere with the importation of liquors from another state into

this, although they were intended for illegal sale here.   It in no way directly interferes with or attempts to regulate commercial transactions between citizens of different states.   It is of course true that it may indirectly have a tendency to interfere with, or to diminish the number and extent of contracts of sale between a resident of another state and of this, upon credit, since a dealer in liquors in another state might, because of this statute, decline to sell to a purchaser here upon credit and to depend for his chance of obtaining payment upon the voluntary act of the purchaser.

But even the prohibitory laws of this state, intended to prevent the sale within the state of liquors, might just as seriously interfere with transactions of this kind, since if liquors cannot be sold in the state they will not presumably be bought for the purpose of reselling here, and the effect of this prohibition might greatly diminish the effect of such transactions.   So too, the principle of law which we have above stated, and which is so well recognized by all authorities, would equally have a tendency in its practical operation to interfere with and to diminish the number and quantity of sales which are included within the meaning of the term interstate commerce.   But, however much the enforcement of our prohibitory laws, and the principle just stated, may affect the extent of sales of goods in one state to be imported into another state, it has never been suggested, so far as we are aware, that because of this indirect effect, these statutory enactments and this common law principle must yield to the interstate commerce clause of the federal constitution.

The limitations upon the power of the state, which we have already referred to, have been established and are recognized, because, except for them, the enactments of a state legislature might have a direct effect upon and interference with commercial transactions between the citizens of different states, the regulation of which was delegated by the states to the national government for the obvious reason that such transactions should be subject to but one system of laws and regulations.   But the question here presented is as to the power of the states over their own courts.

Courts recognize the laws of other states and countries, pertaining to contracts, and give them force and effect upon the principle of

comity. Cooley on Constitutional Limitations, 178. Chief Justice Taney, in speaking of comity, said in *Bank of Augusta* v. *Earle*, 13 Pet. 519: "It is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy or prejudicial to its interests. But it contributes so largely to promote justice between individuals and to produce a friendly intercourse between the sovereignties to which they belong, the courts of justice have continually acted upon it as a part of the voluntary law of nations." Chief Justice Appleton of our court said in *Banchor* v. *Mansel*, supra: "The comity of nations, rightly understood, cannot violate, because it is a part of, the law of this and every other civilized country." It being, then, upon the principle of the voluntary act of comity, that contracts valid where made, but invalid in the state of the forum, will be enforced in the latter state, if not contrary to the established policy or a positive statute of that state it must be within the discretion of the law making power of the state of the forum to limit the extent to which the principle of comity shall be applicable, and the legislature of the state must have the power to say that this principle of comity shall not be extended to a contract the result of which is to give one of the parties thereto the means of violating the laws of the state and its established policy in relation to the sale therein of commodities believed to be prejudicial to the interests of its citizens.

This is in accordance with numerous decisions of courts of the highest authority. In *Emery* v. *Burbank*, 163 Mass. 326, the court said: "A contract valid where made is valid everywhere, but is not necessarily enforcible everywhere." In that case it was attempted to enforce an oral agreement made in Maine, upon a sufficient consideration, in regard to the disposition of a person's property at her death, and valid according to the laws of this state. But the court held that the statute of Massachusetts which declared that no agreement to make a will should be binding unless in writing, embodied a fundamental policy and prevented the enforcement of the contract in the state where such a statute existed, although the contract was valid in the state where made.

In *Heaton* v. *Eldridge,* 56 Ohio St. 87, 60 Am. St. 737, the court in speaking of the principle of comity said: "But it does not extend so far that the remedial system and methods of procedure established by one state or country will yield to those of another, nor that either will recognize and enforce those of the other. Each provides and alters at will its own rules and regulations in the administration of justice, to which those seeking redress in its courts must conform." In that case it was held by the court that a contract binding in the place where made could not be enforced in the courts of Ohio because of a statute of the latter state which forbade the enforcement of such a contract unless in writing.

In *People* v. *Martin,* 175 N. Y. 315, 96 Am. St. R. 628, it was said: "This principle of comity is not, however, unlimited, as cases sometimes arise where the observance of such laws (of other states or countries) would be neither convenient nor answer the purpose of justice. Where foreign laws are in conflict with our own regulations, or our local policy, or do violence to our views of religion or public morals, or may do injustice to our citizens, they are not to be regarded in this state. Whatever force and obligation the laws of one state have upon another depends upon the laws and regulations of the latter—that is to say, upon its own proper jurisprudence or policy, or upon its own express or tacit consent." In another case in the same state, *Marshall* v. *Sherman,* 148 N. Y., 51 Am. St. R. 654, this language was used by the court: "The enforcement in our courts of some positive law or regulation of another state depends upon our own express or tacit consent. The consent is given only by virtue of the adoption of the doctrine of comity as part of our municipal law. That doctrine has many limitations and qualifications, and generally, each sovereignty has the right to determine for itself its true scope and extent. . . . It belongs exclusively to each sovereignty to determine for itself whether it can enforce a foreign law without, at the same time, neglecting the duty that it owes to its own citizens or subjects.

In *Thompson* v. *Taylor,* 66 N. J. L. 253, 88 Am. St. R. 485, the court recognized the doctrine that a contract valid elsewhere will not be enforced if it is inconsistent with the public policy of the

jurisdiction, the aid of whose tribunals is invoked for the purpose of giving it effect. But in that case the court called attention to the distinction between merely regulative legislation which did not embody a fundamental policy, and the adoption of a principle of public policy, and held that the action could be maintained because the statute under consideration belonged to the former class of legislation. In an extended note to *Gist* v. *Western Union Telegraph Company,* 45 S. C. 344, contained in 55 Am. St. R. 763, a great number of cases are cited in support of this principle thus stated : "The only general rule that can be laid down, then, is that contracts and liabilities recognized as valid by the laws of the state or country where made or established may be enforced in the courts of another state or country where the action is brought, unless contrary to morals, public policy, or the positive law of the latter, in which event they will generally not be enforced."

A case much relied upon by the plaintiffs is *Corbin* v. *McConnell,* 71 N. H. 350, 52 Atl. R. 447. But we do not regard that case at all in conflict with the result which we have reached. In that case there was no statute under consideration which prevented recourse to the state courts to recover compensation for liquors sold in another state, but there was a statute which made it a penal offense for one to solicit or take orders in that state for the delivery of liquors in another state, with knowledge or reasonable cause to believe that they were to be brought there and there sold in violation of law. This statute was held unconstitutional as it had the effect to prevent, discourage and restrict commerce between citizens of that and other states, we have no doubt as to the propriety of that decision, but it is obvious that the question there presented was entirely different from the one that we have here considered. The power of a state to limit by express legislative enactment the extent of the application of the doctrine of comity was not there involved.

The established policy of this state, so clearly shown by our constitution and the history of our legislation, is to prohibit the sale of intoxicating liquors within our territorial limits. In furtherance of this policy this statute was enacted and has been in force for many years forbidding a remedy in our courts to certain suitors, under the

conditions named, even if they were innocent in making the contract of sale which placed in the possession of the purchaser the means of violating our laws and established policy. The legal effect of this enactment was simply to limit the application of the principle of comity, and to extend the well established principle that courts will not enforce a contract made by both parties with the view and for the purpose of violating the laws of the state of the forum, to the case of a contract where one of the parties only to the contract, the purchaser, had that purpose in view. This enactment, in our opinion, was within the discretion of the law making power of the state, and is not in violation of that clause of the federal constitution which we have considered. The case of *Knowlton* v. *Doherty*, 87 Maine, 518, where the same objection to this statute was raised, but not very much argued by counsel or discussed by the court, is therefore affirmed.

The counsel for the plaintiffs suggests that the statute is in contravention of the federal constitution in two other respects. That is, in his requests for instructions he asked the court to rule that this statute impaired the obligation of a contract, but he does not argue this point in his brief. In his brief he suggests that the state of Maine cannot prohibit the plaintiffs' right of action in the courts of this state because of the Fourteenth Amendment, although he does not argue his position in this respect or even call attention to which clause of this amendment he claims was violated by the statute. We do not know that he now relies upon either of these positions, but they can be readily disposed of.

The statute in question would undoubtedly have the effect of impairing the obligation of contracts, if it was retroactive in its effect, but it is not. The contract in suit was made in February, 1896, while the statute has been in existence for many years. A statute cannot impair the obligation of a contract, within the meaning of the constitution, that was made subsequent to the enactment of the statute.

If reliance is had upon this clause of the Fourteenth Amendment: "Nor shall any state deny any person within its jurisdiction the equal protection of the laws," the answer is, that by this statute all

persons are treated alike. It forbids the maintenance of a suit in the courts of this state, under the conditions which we have considered, both by residents and non-residents of a state alike. This clause merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and the liabilities imposed. *Leavitt* v. *Canadian Pacific Railway Company*, 90 Maine, 153.

*Exceptions overruled.*