DEMITROS POLYCKRONOS, petitioner,

*v.*

HELEN B. POLYCKRONOS, defendant.

[Decided July 1st, 1939.]

*Mr. James H. White,* for the petitioner.

*Messrs. Skeffington & Walker (Mr. William J. Weliky),* for the defendant.

CAMPBELL, A. M.

Demitros Polyckronos sued his wife in this court for desertion. She counter-claimed for adultery and a decree *nisi* was advised in her favor. This decree also provides for further appearance of the parties for the purpose of determining whether or not Mrs. Polyckronos is entitled to alimony and, if so, in what amount.

Mr. Polyckronos resists this application on the ground that he and his wife entered into a written agreement September 11th, 1930, while both were residents of the State of New York, under which he paid her $3,000 in lump sum; he maintains that the agreement is valid in New York and that, consequently, this court is bound to recognize it as such because of the principle of comity. While Mrs. Polyckronos admits that the agreement is valid in New York she insists, though, that it is of no binding effect here because it is contrary to and in conflict with the declared public policy of this state

and therefore the principle of comity cannot be applied. The agreement states, *inter alia,* that these parties were living separate at the time of its execution and that the wife "does hereby release and discharge the party of the first part of and from any and all claims both past, present and future, of every kind, nature and description, for maintenance and support, or of any other claim by way of alimony or otherwise * * *." Both parties subsequently removed to and took up their separate residences in this state.

The agreement was valid and binding upon these parties in New York and the obligation of Mr. Polyckronos to further contribute to his wife's maintenance and support, for so long as he remained resident there, was, accordingly, extinguished. Court of appeals in *Winter* v. *Winter, 191 N. Y. 462; 84 N. E. Rep. 382.* But when, however, Mr. Polyckronos became a resident of this state his status changed; he automatically became amenable to our laws. Not only that but he sought the benefit of the laws of our forum in an action to divorce his wife and with the undoubted anticipation that in the event of her counter-claiming and being awarded a decree he would, in reliance upon his foreign-made agreement, escape a possible alimony order.

A contract is construed according to the law of the place where made but the method of enforcement must be in accordance with the *lex fori* which, in the instant case, is the law of New Jersey. *Dennison* v. *Dennison, 98 N. J. Eq. 230; 130 Atl. Rep. 463; affirmed 99 N. J. Eq. 883; 133 Atl. Rep. 919; Scudder* v. *The Union National Bank of Chicago, 91 U. S. 406; 23 L. Ed. 245.*

In *Thompson* v. *Taylor, 66 N. J. Law 253; 49 Atl. Rep. 544,* the court of errors and appeals ruled that a contract valid elsewhere will not be enforced if it is inconsistent with the public policy of the jurisdiction the aid of whose tribunals is invoked for the purpose of giving it effect; that when the legislature has declared the policy of the state in relation to a given subject-matter, it is the duty of the courts to give effect, so far as possible, to that policy. In *Receiver of the State Bank at New Brunswick* v. *The First National Bank of Plainfield, 34 N. J. Eq. 450,* this court declared that the

laws of other governments have no force beyond their territorial limits, and if permitted to operate in other states it is upon a principle of comity, and only when neither the state nor its citizens would suffer inconvenience from the application of the foreign law; that no state is bound to give effect to the law of a foreign state when, to do so, will prejudice either the rights of its citizens or the interests of the state; that, on the contrary, each state is bound to give its citizens the full benefit of all the remedies and securities provided by its laws.

Mr. Justice Reed, speaking for the Supreme Court in *Wright* v. *Remington, 41 N. J. Law 48, 52,* stated that whatever may be our opinion of the policy of legislation beyond our state, we are bound by the principles of comity to recognize its validity unless it clearly contravenes the principles of public morality or attacks the interest of the body of the citizens of our state.

In *Flagg* v. *Baldwin, 38 N. J. Eq. 219,* the court of errors and appeals ruled that the enforcement of foreign-made contracts dependent thereon for validity within another jurisdiction and by the courts of another forum, is not to be demanded as a matter of strict right. It is permited, if at all, only from the comity which exists between states. Every independent community must judge for itself how far this comity ought to extend; that a contract valid where made will not be enforced by the courts of this state—at least against its residents and citizens—if, in doing so, they must violate the plain public policy of this forum, or if its enforcement would be injurious to the interest or conflict with the operation of the public laws of this state. Cited by New Jersey Supreme Court in *Park Heights* v. *Brooks* (no state report), *94 Atl. Rep. 83.*

In *Brooks* v. *Cooper, 50 N. J. Eq. 761; 26 Atl. Rep. 978,* the court of errors and appeals ruled that contracts must not contravene the provision or policy of a public law; that a contract may be illegal, although not in contravention of the specific directions of a statute, if it be opposed to the general policy and intent thereof; that it is not necessary that the statute should contain words of positive prohibition. See, also, *Hinkley* v. *Freick (Court of Errors and Appeals), 86 N. J. Law 281; 90 Atl. Rep. 1108.*

In *Corbin* v. *Houlehan, 100 Me. 246; 61 Atl. Rep. 131,* the supreme judicial court ruled that courts recognize the laws of other states pertaining to contracts and give them force and effect upon the principles of comity. But whatever force and obligation the laws of one state have upon another depends upon the laws and regulations of the latter; upon its own proper jurisprudence or policy, or upon its own express or tacit consent. It belongs exclusively to each sovereignty to determine for itself whether it can enforce a foreign law without at the same time neglecting the duty it owes to its own citizens or subjects. It is upon the principle of the voluntary act of comity that contracts valid where made, but invalid in the state of the forum, will be enforced in the later state if not contrary to the established policy of that state.

Comity is not a rule of law but one of practice, convenience and expediency; it does not command, it only persuades.

By force of the foregoing authorities it is evident that if a foreign-made contract violates the established policy of this state, comity will not persuade its enforcement although the contract may be valid according to the laws of the state wherein it was made.

In *Felt* v. *Felt, 59 N. J. Eq. 606; 45 Atl. Rep. 105,* the court of errors and appeals declared substantially to the effect that state policy, when determined by the legislature, controls the judicial branch of the government, and the legislature of New Jersey, by vesting in its court of chancery sole jurisdiction over the subject of divorce and nullity of marriage, alimony and maintenance, has declared what our policy in this regard shall be.

The most recent pronouncements of the court of errors and appeals incident to separation agreements being *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529; 162 Atl. Rep. 543; Second National Bank* v. *Curie, 116 N. J. Eq. 101; 172 Atl. Rep. 560; Aiosa* v. *Aiosa, 119 N. J. Eq. 385; 183 Atl. Rep. 219,* and *Phillips* v. *Phillips, 119 N. J. Eq. 462; 183 Atl. Rep. 220,* no good purpose will be served herein by an extended review of previous decisions of that court which appear to be in conflict. For a very able treatise dealing with these

cases see *Cohen* v. *Cohen, 121 N. J. Eq. 299; 188 Atl. Rep. 244,* by Vice-Chancellor Berry.

My conclusion is that comity does not persuade the recognition of foreign-made agreements when to do so would be to violate the declared public policy of this state; that all agreements, wherever made, entered into directly between husbands and wives, and whether before or after the marriage is dissolved, which attempt to fix support and maintenance, are void *per se* because contrary to the public policy of this state as declared by what is commonly known as our Divorce act, being *1 R. S. (1937) 2:50-1 et seq.,* and formerly *2 Comp. Stat. 1910 p. 2021;* I am of opinion that this conclusion finds ample support in the picked at random citations that follow and which do not, by any means, exhaust the law on the subject.

The court of errors and appeals stated, in *Sobel* v. *Sobel, 99 N. J. Eq. 376; 132 Atl. Rep. 603,* that an essential factor to be kept in mind and considered in determining the legal effect to be given to settlement agreements made between husband and wife is that the marriage relation is a status governed by a declared state policy, and hence the state, for the conduction of the public welfare, is largely concerned in carrying out its legislative policy. One of the principal duties arising out of the marital tie is the duty of the husband to provide suitable support and maintenance for his wife. This is a common law duty arising out of the status of wedlock. The obligation to support and maintain the wife does not arise out of any contract between husband and wife to that end, but out of a state policy, recognized and enforced by the civil and common law. In *White* v. *White, 87 N. J. Eq. 354; 100 Atl. Rep. 235,* the court of errors and appeals ruled that a husband and wife cannot contract to disregard their marital obligations. In *Boehm* v. *Boehm, 88 N. J. Eq. 74; 101 Atl. Rep. 423,* cited in *Hires* v. *Hires, 91 N. J. Eq. 366; 110 Atl. Rep. 513; affirmed, 92 N. J. Eq. 451; 112 Atl. Rep. 498,* it was declared that if a husband can, by agreement with his wife, absolve himself from the duty of support for all time, it is obvious that this court is rendered powerless to perform the duty imposed by our Divorce act. *Irwin*

v. *Irwin, 98 N. J. Eq. 454; 131 Atl. Rep. 304;* affirmed, *100 N. J. Eq. 347; 134 Atl. Rep. 918,* states that no adjudication appears to have been made in this state in which it may be said that an agreement between husband and wife stipulating the amount the wife shall be entitled to receive in satisfaction of the husband's duty of support, has been recognized as operative to withdraw from this court the performance of its statutory duty. In *Moller* v. *Moller, 121 N. J. Eq. 175; 188 Atl. Rep. 505,* this court stated substantially to the effect that inasmuch as our Divorce act (then *2 Comp. Stat. 1910 p. 2021,* now *1 R. S. (1937), 2:50-1 et seq.*) gives to chancery jurisdiction to award alimony and from time to time to increase or diminish it, any contract between husband and wife attempting to fix alimony is contrary to the policy of that statute and therefore void. To the same effect, *Lester* v. *Lester, 122 N. J. Eq. 532; 195 Atl. Rep. 381.* And, in *Hollingshead* v. *Hollingshead, 91 N. J. Eq. 261; 110 Atl. Rep. 19,* this court declared that, considering the fundamental principal that the matrimonial status is a matter of concern not merely to the two spouses but equally so to the state, the legislature has laid down, by statutory provisions, a definite pronouncement of the public policy of this state. This court, in *Schneider* v. *Schneider, 103 N. J. Eq. 149; 142 Atl. Rep. 417,* in referring to *Felt* v. *Felt (Court of Errors and Appeals), 59 N. J. Eq. 606; 45 Atl. Rep. 105,* said: "That decision was primarily based upon the public policy of this state in matters of divorce as ascertained by the legislation on that subject then existing." In *Lynde* v. *Lynde, 64 N. J. Eq. 736; 52 Atl. Rep. 694,* the court of errors and appeals held that the purpose of our Divorce act is to require the husband to pay to the wife, periodically, such sum as, in view of his circumstances and the necessities of the wife, will be a reasonable fulfillment of his continuing duty to support her. And, in *Irwin* v. *Irwin, supra,* what the court cannot admeasure as a finality the husband cannot limit by the purchase of immunity (separation agreement) from future liability should conditions arise in which justice impels a reassertion of the rights of the wife. This court held, in *Greenberg* v. *Greenberg, 99 N. J. Eq.*

*461; 133 Atl. .Rep. 768,* that it is one thing for a wife to express her willingness to accept a certain sum in lieu of alimony and quite another for the court. to ascertain and adjudge that the sum is suitable and adequate for her support. In *Apfelbaum* v. *Apfelbaum, supra,* the court of errors and appeals declared that our decisions hold uniformly that alimony is a subject specifically committed to the court of chancery and arising from the present or past status of the parties as husband and wife. The jurisdiction not only exists while that relation persists but by the express language of the Divorce act, section 25, *2 Comp. Stat. 1910 p. 2035* (now *1 R. S. (1937) 2:50-37),* continues after decree of divorce; and it necessarily includes the power, in cases where the wife is entitled to alimony, to regulate the amount thereof from time to time, to supervise agreements between the parties in that regard, to enforce them if deemed just and to decline to recognize them otherwise. In *Phillips* v. *Phillips, supra,* the court of errors and appeals ruled that agreements may be regarded by the court as evidential with regard to the amount of money to be paid, though not controlling in that regard. And, by the same court, in *Aiosa* v. *Aiosa, supra,* that the reasonable needs. of the wife and the ability of the husband must be shown.

Since the court of chancery has no inherent jurisdiction to decree alimony or maintenance (*Freund* v. *Freund, 71 N. J. Eq. 524; 63 Atl. Rep. 756; affirmed, 72 N. J. Eq. 943; 73 Atl. Rep. 1117; Hervey* v. *Hervey, 56 N. J. Eq. 424; 39 Atl. .Rep. 762*), it follows that the remedies intended by the court of errors and appeals in the *Apfelbaum, Curie, Aiosa* and *Phillips Cases, supra,* are those provided by our Divorce act, sections 25 and 26, *2 Comp. Stat. 1910 p. 2021,* now *1 R. S. (1937) 2:50-37* and *2:50-39. Pierson* v. *Pierson, 15 N. J. Mis. R. 117; 189 Atl. Rep. 391.*

It is logical to conclude, then, that the jurisdiction of this court incident to support agreements, as emphasized and reaffirmed in those cases (*Apfelbaum* and others, *supra*), may be defined as the power, in all cases where the wife or ex-wife is entitled to support, to enforce the husband's legal obligation to support as distinguished from the power to

enforce the contract; the power to fix the measure and direct the performance of that obligation in the form of a decree for alimony or separate maintenance, having regard to, but not being controlled by, any agreement which the parties themselves may have made with respect to the measure of the husband's duty; that so long as the husband's legal (as distinguished from contractual) obligation exists, the parties are incompetent to make an absolute agreement by fixing the measure of that obligation. *Noel* v. *Noel, 15 N. J. Mis. R. 576; 193 Atl. Rep. 558.* In other words, an agreement between husband and wife serves merely to liquidate or admeasure the *quantum* of that obligation under the circumstances prevailing at the time it was made; it serves somewhat in the nature of a yardstick for the court's guidance in determining, *inter alia,* what the husband's faculties were at the time the agreement was entered into.

The State of New Jersey, represented by this court, does not manifest what might be termed an active interest in or supervision over the marital affairs of husbands and wives domiciled here so long as justifiable causes of action do not exist between them. When, however, a justifiable cause does accrue then the benefits of the statute become available; and I do not perceive of a single situation wherein a wife, she being guiltless of a matrimonial offense, would be disentitled to all necessary relief under that statute even though she and her husband had entered into a separation agreement. In other words, a separation agreement between husband and wife is not a bar to the wife's right to alimony, because if she is the innocent party she may take the proper steps to terminate the separation, unless excused by her husband's act or attitude, and sue for separate maintenance.

The interest of the state lies in encouraging rather than in discouraging the husband from acknowledging his obligation; its interest lies in securing proper maintenance for the wife and children without protracted litigation. This can be effectually accomplished by a decree for maintenance in which the allowance is fixed by the court, or, if agreed upon, approved and modified from time to time by the court to meet the changing circumstances of the parties. The practice of

entering separate maintenance decrees upon consent is well established and there can be no valid objection to the husband's waiver of defenses in such a case. The sole purpose of such a decree is to liquidate into a judicial order the husband's common law obligation to support his wife; that so long as the effect of such decree is confined solely to the matter of support there can be no sound reason for declining to rest it upon the husband's consent. *Adams* v. *Adams* (*Court of Errors and Appeals*), *80 N. J. Eq. 175; 83 Atl. Rep. 190; Pierson* v. *Pierson, supra.*

The fact that the legislature has prescribed a particular mode to be pursued in determining an abandoned wife's maintenance and a divorced wife's alimony, necessarily excludes the right to resort to any other or different method. Consequently, the agreement in question, though valid where made, is not enforceable here because it violates the public policy of this state as declared by our Divorce act, *supra,* and therefore is within the exception to the rule of comity.

Mr. Polyckronos should be ordered to pay as much alimony as will support his former wife in the same degree of comfort as she might reasonably expect to enjoy if living with him in a state of domestic happiness. Payment of the gross sum, which Mrs. Polyckronos accepted in discharge of her future claims to support, cannot be regarded as standing upon a plane different from agreements contemplating periodical installments. *Hires* v. *Hires* and *Irwin* v. *Irwin, supra.* Inquiry, then, should now be made not only as to his financial circumstances and faculties but, also, as to what portion of the $3,000 Mrs. Polyckronos has not expended for her own support. In arriving at what, if any, permanent alimony she may be entitled to, such unexpended balance shall be given consideration by way of offset or refund, as the circumstances may warrant.