This aged colored couple were married in 1888 and have a family of grown children. The husband deserted his wife and home in 1915. A few days after, they entered into a separation agreement by which she was allowed $40 a month. In January, 1919, the wife filed her bill for maintenance, in which she charged a course of cruel and abusive treatment, assaults, the desertion, and his defaults in the payment of the allowance. The case was undefended, and a decree was entered which recites that the husband, without justifiable cause, abandons his wife, and fails and neglects to support her, and ordered him to pay her $40 a month. The husband now wants to vacate the decree and to dismiss the bill because, as he alleges, he has made an honest effort to become reconciled with his wife, and that she refuses his advances. He called upon her once in February, 1922. Personally he made no effort before and none since. He sent some friends to intercede, and to him and them she gave the same answer, *Page 50 
in substance, that she did not want to live with him again. In July, 1920, shortly after the maintenance decree, he filed a petition for divorce, alleging desertion in April, 1917. The case was contested, and dismissed in December, 1921. Within two months he called on his wife, with a white man, and I repeat what he said occurred. "I said, `Good evening, Mrs. Scotland — Christella, I have come to see you on an important matter of interest to us both. We are both getting older. We have been living apart, and I think we ought to forget our differences and bury them, and let us get back together and live.' She then said to me, `Not until you pay me what you owe me, you and that rascal of an attorney of yours has robbed me. When you pay me I will talk to you.' I said, `It isn't a matter of money now,' I said, `This is my home,' and I said, `I am alone and I need the comfort of a wife,' and I said, `We can forget our differences.' She says, `No;' she is getting along well and she is doing well, and from all appearances, she says, I am being taken care of. I said, `Nothing of the kind;' I said, `I want to make a home here, and if this is not satisfactory to you we can get a home somewhere and live the balance of our days,' and she said, `No;' and I spoke to her several times with reference to it, and then she said no several times, and I said, `Well, is it final?' She said, `Yes;' she says, `You haven't come to me in the proper attitude.' I said, `What do you mean?' I suppose it is because she can say there was a friend with me."
I decline to vacate the decree because I am not convinced that the advances were sincere, and if they were made in earnest they were not such as the circumstances and law require.
The offer was studied, stilted and stupid. It came from the lips, not the heart; from a recreant, not a penitent. He had left her cold several years before to shift for herself on a mere pittance. During all that time he ignored her, was insensible to her existence and indifferent to her distress. He had just been defeated in an effort to be rid of her, and on grounds he knew were false. He brought with him a white man to bear witness to his tender, barren of *Page 51 
repentance or contrition or promise — just words, in which he doubtless had been tutored in the then recent divorce litigation. The wife, a woman of experience and spunk, and justly bitter, sensed his spirit and motive and insincerity, and resentfully and rightly spurned his abrupt and hollow offer, not as a finality, but, as she accurately and exquisitely summed up the whole situation, "You haven't come to me in the proper attitude." He has not availed himself of the implied invitation. He need not bend the knee but he must, at least, bow the head before he can hope for relief there or here. Sending friends to sound her out is poor taste. She was not called upon to disclose to them her true feeling, and her replies count for little or nothing.
The husband's conduct does not indicate that he had experienced a change of heart. The acute attack smatters of the purpose of laying a foundation for another divorce action. In fact a second petition to that end was filed and recently dismissed.
The wife's offer to negotiate if he would pay her what he owed her, refutes the idea of unwillingness to return to him, and the condition was not unreasonable. She had been dependent upon the allowance of $10 a week and her own labors for existence. She did not get all the allowance, through his default or misappropriation by her lawyer. She claimed there was due her $500. A shortage of $246 is admitted. He could have made up the deficiency, he was well able to give her a larger allowance. A more generous spirit and thoughtful consideration in the past might have made the way back easier.
The point was not made at the hearing, but it suggests itself, that the wife was not obliged to entertain his offer. Oertel v.Oertel, 92 N.J. Eq. 327. He willfully and obstinately deserted her in 1915, and the desertion continued for more than two years. Her right of action to a divorce was vested (Gordon v. Gordon,89 N.J. Eq. 535) unless the separation agreement interrupted the continuity. A desertion may be willful and obstinate notwithstanding such an agreement. Power v. Power, 66 N.J. Eq. 320. *Page 52