ANNA McLEAN, complainant-appellant,

*v.*

WILLIAM McLEAN, defendant-appellee.

[Submitted October term, 1928.   Decided February 4th, 1929.]

'Mr. *Aquila N. Venino,* for the complainant-appellant.

Mr. *Howard Isherwood,* for the defendant-appellee.

The opinion of the court was delivered by

KAYS, J.

This is an appeal from a decree of the court of chancery dismissing the bill of complaint of the complainant-appellant for separate maintenance of the wife who is the appellant here.   The decree also denies counsel fee to the solicitor of the complainant and directs that the sheriff of Essex county deliver to the defendant, or his solicitor, the *ne exeat* bond given by the defendant to the sheriff.

The proofs show that the parties were married on June 3d, 1914, and resided in East Orange, New Jersey.   They lived happily together until about November, 1925.   The complainant then discovered that her husband, the defendant, was

carrying a photograph of a girl in the back of his watch. This information was obtained by her from a friend. The wife, upon obtaining this information, removed the photograph from her husband's watch without his knowledge. About a week thereafter her husband learned of the disappearance of the photograph and telephoned his wife concerning the matter, stating to her that the fact she took the photograph from his watch would do her no good as he would put another one in the place of it. The husband stayed out late evenings and two or three times a week would not arrive home until about two A. M. The wife evidently became suspicious and watched her husband on certain occasions after he left his work. On one occasion she saw him in an automobile in front of a drug store and a girl was occupying the front seat of the automobile. This was the girl whose photograph the husband had carried in the back of his watch. The wife endeavored to follow them in a taxicab but was unable to do so. She, for some reason, thought that he might go to a road house known as Canary Cottage and she thereupon drove to this place. This road house evidently was several miles from East Orange. Upon the arrival of the wife at the road house she discovered her husband's car, entered the road house and asked the proprietor to call her husband. Her husband came out and at first told her he was there with some boys from his office, but afterward admitted that this was not true and agreed to take her inside if she would not create a disturbance. Upon entering she saw the girl sitting at a table with some drinks and sandwiches in front of her. The girl finished the refreshments and thereupon the three drove back to East Orange. During this period there were many quarrels between the husband and wife. There came into the possession of the wife a letter which was offered in evidence addressed to "My Dear One," in which was inclosed a photograph containing the following words: "From one that dearly loves you! Irene." The letter also contained the following: "Will meet you as promised without fail. Am always thinking of you and always will. Counting the minutes till I see you again Honey. Lovingly yours, Irene." This

letter and photograph were obtained by the wife from the inside coat pocket of the husband and the envelope was addressed to William McLean, 500 Chancellor avenue, Irvington, New Jersey, contained a canceled postage stamp and showed the mailing date as September 20th, 1927. There was evidence on the part of the wife which was corroborated and also admissions by the husband in his answer that he, during the time of the trouble with his wife, was in the company of other women beside the one above referred to.

It is claimed by the defendant that his wife attacked him with a razor. This testimony was uncorroborated. On the other hand the wife claimed that the husband attacked her with a razor and this was corroborated by the landlady in whose home they lived. This attack resulted in the wife's fingers being cut. It was alleged that the defendant was sometimes intoxicated or partially so and that he gambled on horse races. The constant quarreling between the husband and wife affected the nerves of the complainant. On October 22d, 1927, the husband kissed his wife good-bye and asked her to meet him at the station at six-thirty. She went to the station but the husband did not appear. He never again returned to their home or to her, nor is there any offer appearing in the evidence that the husband asked the wife to again live with him. The complainant was without means of support and the defendant was employed by the United Radio and Electric Corporation and received a salary of about $275 a month.

The defendant sought to justify his desertion in answering the bill filed in this case by setting up the defense of extreme cruelty. The extreme cruelty was based upon threats to kill him which the defendant admits were made because of his attention to other women. These threats, however, were denied by the complainant. The vice-chancellor advised a decree dismissing the bill and held that the wife was guilty of extreme cruelty which justified the desertion.

We are of the opinion that the evidence produced in this case on the part of the husband, the defendant, was not sufficient to justify his desertion of the complainant. A husband must justify such a separation by him from his wife by

proof of extreme cruelty on the part of his wife to the same extent as he would be compelled to prove it if he were suing for divorce from bed and board upon the ground of extreme cruelty. In the present case there was only one overt act upon which the defendant relied to prove such extreme cruelty and that was the alleged attack of the wife upon him with a razor. This was not corroborated on his part. On the other hand the wife claimed that the attack with the razor was made by the husband upon her and her testimony is corroborated by the landlady who owned the house in which they lived. A single act of extreme cruelty is not sufficient to justify desertion. *Cavileer* v. *Cavileer, 94 N. J. Eq 160*. He also relied upon the threats to kill him above mentioned. It was contended that the wife had a hot temper and a very jealous disposition. However, it seems from the evidence that she was justified in her jealousy and naturally such jealousy is usually accompanied by some display of temper as appears in this case, but we are of the opinion that this was not sufficient to warrant the finding of extreme cruelty upon the part of the wife. An examination of the testimony in this case disclosed the fact that the testimony of the complainant, which was corroborated, was corroborated by persons who were not related to the complainant and apparently had no interest in the suit. On the other hand such testimony of the defendant as was corroborated, was corroborated by persons who were relatives either by blood or by marriage of the defendant. Therefore the decree dismissing the bill of complaint of the complainant is reversed with costs and a decree in favor of the complainant should be made to provide suitable support and maintenance for the wife by the husband as prayed for in said bill. It is a matter of discretion with the court of chancery whether the solicitor of the complainant should be paid a counsel fee and whether the *ne exeat* bond should be surrendered.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Kalisch, Katzenbach, Campbell, Lloyd, White, Van Buskirk, McGlennon, Kays, Hetfield, Dear, JJ. 13.