Helen C. Maloney, petitioner,

*v.*

Edwin J. Maloney, defendant.

[Decided March 21st, 1934.]

*Mr. John Milton,* appearing specially for the defendant.

*Messrs. McCarthy & McTague,* for the petitioner.

HERR, A. M.

On February 18th, 1931, Helen C. Maloney filed her petition in this cause for an absolute divorce from the defendant, Edwin J. Maloney, on the ground of desertion. The petitioner was then and still is a *bona fide* resident of New Jersey. Jurisdiction for the purpose of the divorce was acquired by publication, followed by notice without the state, as service substituted for personal service of process within the state.

The defendant did not appear, and the allegations of the petition were proved *ex parte* before a special master, who found that the parties were married on October 11th, 1924; that there was one child born of the marriage, a girl of five years of age at the time of filing the petition; that the defendant deserted the petitioner and their child in the month of July, 1926, ever since which time his desertion had been willful, continued and obstinate, and that the petitioner was a *bona fide* resident of New Jersey when said cause of action arose and had ever since and for more than two years preceding the commencement of the action continued to be such *bona fide* resident. A decree *nisi* was duly entered on March 22d, 1932, in favor of the petitioner, which decree recited that jurisdiction over the defendant had been acquired by publication and notice without the state, as aforesaid. By final decree entered on June 23d, 1932, the decree *nisi* was made

absolute, the parties divorced from the bonds of matrimony, and the marriage dissolved.

The petition contained no specific prayer for alimony of the wife or maintenance of the child. Neither the decree *nisi* nor the final decree made such provision. No application was made at any time for alimony or maintenance until September 13th, 1933, when the petitioner filed a petition in the cause setting forth the facts hereinabove stated and alleging further that she is without funds to properly support herself and the child and has no income except such as is derived from her own exertions; that defendant is not a resident of New Jersey and cannot be found within this state for the service of process; that defendant has recently become entitled, as next of kin of his uncle, to a distributive share of his uncle's estate; that said uncle died domiciled in New Jersey and his estate is in process of administration in New Jersey, by reason whereof the defendant has property within this state; and that defendant's means are amply sufficient for him to raise and pay such sums as may be necessary for the support of the petitioner and their child. The petition prays that an order may be made for permanent alimony for the petitioner and for the payment of a reasonable amount for the support, maintenance and education of the child; that a writ of sequestration issue to compel defendant's appearance and performance of such order as may be made; that defendant and the administrators of his uncle's estate be restrained from dealing with the defendant's property in such manner as to defeat petitioner's claims, and that a receiver be appointed.

Upon the filing of this petition, duly verified, an order was made herein on September 13th, 1933, that a writ of sequestration issue against the defendant, directed to a master in chancery, ordering him to immediately sequester the defendant's estate, &c., restraining the defendant from encumbering, pledging or transferring any of his property within this state, and restraining the administrators of the uncle's estate from selling, delivering or turning over to the defendant or any other person any or all of the estate, real or personal, &c., to which the defendant is entitled.

On September 14th, 1933, a writ of sequestration was issued pursuant to said order, which was executed as therein directed.

By leave of the court, the defendant, Edwin J. Maloney, appears specially for the sole purpose of attacking the jurisdiction of the court to make the order of September 13th, 1933, and to issue the writ of sequestration; and argues that the court derives its jurisdiction in the matter solely by statute, that the Divorce act does not make any such provision and that the 1919 supplement to the Chancery act, known as the Sequestration act, cannot be invoked by the petitioner to authorize the order and writ because a claim for alimony is not within the defined purpose of the 1919 act, because it is a general act and cannot be deemed to amend the prior Divorce act which is a special act, because the title of the 1919 act is not sufficiently broad to permit a construction of it to include alimony claims without contravening article 4, section 7, paragraph 4 of the New Jersey constitution, and finally because to so construe the 1919 act would violate the due process of law provision of the fourteenth amendment to the United States constitution.

By virtue of the Divorce act (*P. L. 1907 p. 474; 2 Comp. Stat., p. 2021*) this court has jurisdiction to award permanent alimony, as well as maintenance for the children of the marriage in the wife's custody, on the wife's application after final decree for divorce in her favor, although her petition for divorce does not pray for alimony or maintenance and although the final decree is silent thereon. *McKensey* v. *McKensey, 65 N. J. Eq. 633; Sweeney* v. *Sweeney, 95 N. J. Eq. 192; Sobel* v. *Sobel, 99 N. J. Eq. 376; Smith* v. *Smith, 88 N. J. Eq. 319.*

While the court derives its substantive jurisdiction over divorce, maintenance and alimony, solely from the Divorce act (*Anon., 24 N. J. Eq. 19; Hervey* v. *Hervey, 56 N. J. Eq. 424*), and while that act prescribes special forms of process and modes of procedure, it was not the legislative intent to limit thereby the court's remedial powers in dealing with such matters, for by section 9 it is provided that "the like process and procedure shall be had and pursued in all such causes

as are usually had and pursued in other causes in the court of chancery, except so far as other process and procedure is prescribed by or under the authority of this act."

In suits for divorce or nullity as distinguished from suits for maintenance under section 26, the writ of sequestration is not prescribed as *original* process by the Divorce act. Section 25 (amended *P. L. 1933 p. 296*) authorizes the issuance of the writ pending a suit for divorce or nullity or after decree for divorce only in *execution* of an order or decree for alimony. In this respect it is in contrast with section 26, which provides that the writ may issue as original process in maintenance suits. No sound reason for the distinction is apparent. It seems to have arisen through oversight rather than by design. But in view of section 9 the omission is not important if the court have power to issue writs of sequestration as original process in other equity causes.

Such power is expressly granted by the 1919 supplement to the Chancery act, known as the Sequestration act. *P. L. 1919 p. 444.* By section 1 of this supplement it is provided that "in any proceeding commenced in the court of chancery in which a money decree is prayed against a defendant and it shall be made to appear, by affidavit, that the defendant is a non-resident and has property * * * within this state, the court may, upon the filing of the bill or petition or at any time thereafter, issue its writ or writs of sequestration. * * *."

If this court prior to the 1919 supplement lacked authority to issue the writ of sequestration as original process in a proceeding such as the present, the supplement affords such authority unless one or more of the objections raised by the defendant are to prevail. He argues that the petitioner does not by her proceedings in this case bring herself within the terms of the supplement, because her original petition for divorce does not contain a prayer for alimony, her subsequent petition for alimony, filed after decree, being only incidental to the earlier proceeding: in other words, because her original pleading is not specific, within the rule of *Grobholtz* v. *Mervel Mortgage Investment Co., 115 N. J. Eq. 411.*

There is no merit in this contention. Alimony follows the divorce. It need not be specifically prayed. Had the defendant been served with citation the decree could have provided alimony. Such is the common practice. The petition of September 13th, 1933, served to lay the foundation not of the proceeding for alimony, but of the issuance of the writ of sequestration as mesne process in the suit. So far as the court now has jurisdiction to decree alimony (*in rem*) it derives the same from the seizure of the defendant's New Jersey property under the writ. In this sense the writ is original process, although issued as mesne process in the divorce suit. The fact that the original petition does not *expressly* pray for a "money decree" against the defendant does not keep it from falling within the 1919 supplement; *impliedly* a money decree is prayed for in every divorce petition filed by a wife, even where no prayer for further relief is included; *a fortiori* where, as here, there is a prayer for further relief. *McKensey* v. *McKensey, supra.*

The defendant next argues that a proceeding of the kind now before the court is not within the defined purpose of the 1919 supplement, because a proceeding for alimony cannot be considered as a "proceeding in which a money decree is prayed." This would be too narrow a construction. ·

The supplement, by section 15, provides as follows:

"This act is remedial and is to be liberally construed. Its purpose is to subject the property of non-residents to the satisfaction of claims cognizable in a court of equity in analogy to attachment proceedings at law. Errors of form or substance which do no substantial damage are not to vitiate the proceedings, and the court may, at any stage of the proceedings. permit amendments, &c."

And by section 17:

"The chancellor may make such rules or special orders as he deems necessary for the effectual carrying out of the purpose of this act, and may prescribe the form of writs, notices, process, &c."

In the case of *Frank* v. *H. E. Salzberg Co., 102 N. J. Eq. 107,* Vice-Chancellor Fallon held that this statute authorizes sequestration *in any chancery proceeding* for a money decree against a non-resident with property in this state.

In *Swetland* v. *Swetland, 105 N. J. Eq. 608,* Vice-Chancellor Berry observed that the Sequestration act contains no limitation on the type of equitable action in which a sequestration writ may issue other than that a money decree be sought, and that it is remedial and is to be liberally construed to effectuate its purpose, which is to subject the property of non-residents to the satisfaction of claims cognizable in a court of equity in analogy to attachment proceedings at law.

Alimony, while not a property right, is "a personal right." It is "imposed as a personal duty upon the husband for the personal benefit and support of the wife, or of the wife and children, in case there be children." It is a "means of enforcing the continuing duty of support which the husband owed to the wife, and of which he was not permitted to absolve himself by his own misconduct * * *." *Lynde* v. *Lynde, 64 N. J. Eq. 736.* It is a "claim cognizable in a court of equity," by virtue of the Divorce act, and within the meaning of section 15 of the Sequestration act.

To hold otherwise would not be carrying out the legislative direction contained in section 15, requiring a liberal construction of the supplement and (if the court's authority is rested on the supplement) might well leave the petitioner without a remedy, for the courts of the several states are not in accord in granting alimony on the application of a wife who has procured a decree for divorce, without alimony, upon substituted service of process, in a sister state. See note, *42 A. L. R. 1389 et seq.*

The defendant next argues that the supplement of 1919 is a general act while the Divorce act of 1907 is a special act, and therefore the former cannot properly be held to affect the latter. Not so. The 1919 act is procedural, while the Divorce act expressly provides that recourse be had elsewhere in matters of procedure not prescribed by the Divorce act. Whether authority in matters of procedure emanates from the Chancery act or the 1919 supplement thereto or from other statutes or from the court's inherent power, the effect of section 9 of the Divorce act is to authorize the court to have recourse

thereto in dealing with proceedings over the subject-matter of which the Divorce act gives the court jurisdiction.

Nor is the title of the Chancery act and of the supplement thereto such that their provisions cannot constitutionally be applied to the present proceeding.

The Chancery act and its amendments and supplements are procedural and general in character. Their provisions apply to all proceedings brought in chancery under special acts except to the extent that such special acts may expressly limit their operation. *Realty Company of New Jersey* v. *Burghardt, 91 N. J. Eq. 120; Cona* v. *Henry Hudson Co., 86 N. J. Law 154; Silver* v. *Gattel, 89 N. J. Eq. 402.* Their titles ("An act respecting the court of chancery" and "A supplement to 'An act respecting the court of chancery,' &c.,") are therefore clearly indicative of their purpose.

The purpose of the constitutional provision and the test to be applied is expressed in *Hulme* v. *Board of Commissioners of Trenton, 95 N. J. Law 30,* as follows:

"The constitutional provision (that the title shall clearly indicate the object) was meant to prevent the concealment of the real object and what is commonly called logrolling. The incongruity of the object of a statute in its application to the facts must depend on the existing state of the law, just as the court of errors and appeals has held that the object expressed in the title must give notice of the effect of the legislation to one conversant with the existing state of the law  *  *  *."

The title of the supplement of 1919 therefore satisfies article 4, section 7, paragraph 4 of the New Jersey constitution in its application to the proceedings under the Divorce act.

So far it has been assumed that the court's authority to issue the writ in this case rests upon the 1919 supplement. But it may be rested upon the inherent prerogative power of the court. As early as the reign of Elizabeth, the court of chancery issued the writ of sequestration as original process to compel the defendant's appearance. Cases which indicate that such practice was resorted to when the occasion arose

include: *Desbrow* v. *Crommie, Bunb. 273; Baily* v. *Peastly, Bunb. 26; Gibson* v. *Scevengton, 1 Vern. 247; Lord Ward* v. *Lord Meath, 2 Chan. Cas. 173; Ex parte Jephson, Prec. Ch. 549; Vanhathen* v. *Shuman, Dick. 135; Rashleigh* v. *Buller, Dick. 152; Rees* v. *Mansel, Dick. 293; Lord Clifford's Case, 2 P. Wms. 385; Anon., 1 Atkins 19.*

In New Jersey, prior to the 1919 supplement, Vice-Chancellor Garrison in the unreported case of *Gilson et al., Receivers* v. *Appleby et al.* (docket 31/397), issued a writ of sequestration as original process in a proceeding by reecivers of an insolvent corporation for an assessment of a non-resident stockholder upon his unpaid stock subscription and for the collection thereof. The defendant Appleby resided in Minnesota and could not be served with subpœna in New Jersey. He owned New Jersey real estate. Had the receivers been obliged to first secure an assessment in New Jersey and then sue in Minnesota and upon securing judgment there return to New Jersey and sue on such judgment here, the stockholder might in the meantime have disposed of his property. These facts being presented to the vice-chancellor, he ordered the issuance of the writ. The defendant's lands were seized thereunder and the assessment made and collected.

Every form of process now commonly used in chancery was originally an invention necessitated by the inadequacy of the previous procedural methods to cope with a novel situation, and was issued without legislative sanction, and sometimes in spite of legislative opposition, as the exercise of the royal prerogative inherent in the chancellor in his extraordinary judicial capacity. *Spence: The Equitable Jurisdiction of the Court of Chancery,* and authorities there collected.

The prerogative of the chancellor to issue appropriate writs is necessarily as broad, within constitutional limitations, as is required to deal effectively with the subject-matter over which his jurisdiction extends. Equity will not suffer a wrong to be without a remedy.

This leaves for discussion the final objection of the defendant, that the fourteenth amendment of the United States constitution forbids the issuing of process *in rem* in an ali-

mony proceeding. His argument is that while a state can acquire jurisdiction of property within its borders in an action *in rem,* no judgment can be entered against a defendant on a money demand in the absence of personal service upon the defendant within the jurisdiction, or a waiver by him of such service, or an appearance in the action; that while judgment in an action brought against a person concerning a thing, which thing is within the territorial jurisdiction of the court, may be based upon substituted service of process, an action for alimony is not an action concerning a thing; it is not an action *in rem* or even *quasi in rem,* but an action purely *in personam,* because it is brought to secure a money decree although such decree can be satisfied only out of property of the defendant within the jurisdiction. Hence, unless there be personal service of process upon the defendant within the jurisdiction, or a waiver or appearance, there is a denial of due process of law and a deprivation of property of the defendant in violation of the rights secured to him by the fourteenth amendment to the constitution of the United States.

It is to be observed that the objection that there has been a denial of due process of law, if valid, is fatal, whether the authority exercised in this case be based uopn the 1919 supplement or upon the inherent jurisdiction of the court. The objection is grounded upon the *dicta* of the court of errors and appeals in *McGuinness* v. *McGuinness, 72 N. J. Eq. 381,* but is disposed of by the more recent decision of the United States supreme court in *Pennington* v. *Fourth National Bank, 243 U. S. 269; 61 L. Ed. 713.* There a wife sued for divorce and alimony in Ohio, joining as defendant an Ohio bank in which her husband had a deposit of money to his credit. The defendant husband was beyond the jurisdiction of the court, and could not be served with process. At the commencement of the suit, the bank was restrained from paying out any of the moneys on deposit on the husband's order, and subsequently paid over the same to the wife on orders of the court. In an action by the husband against the bank it was held that he could not recover. Writing for the court, Mr. Justice Brandeis said:

"Substituted service on a non-resident by publication furnishes no legal basis for a judgment *in personam.* *Pennoyer* v. *Neff, 95 U. S. 714.* But garnishment or foreign attachment is a proceeding *quasi in rem. Freeman* v. *Alderson, 119 U. S. 185.* The thing belonging to the absent defendant is seized and applied to the satisfaction of his obligation. The federal constitution presents no obstacle to the full exercise of this power.

"It is asserted that these settled principles of law cannot be applied to enforce the obligation of an absent husband to pay alimony, without violating the constitutional guaranty of due process of law. The main ground for the contention is this: In ordinary garnishment proceedings the obligation enforced is a debt existing at the commencement of the action, whereas the obligation to pay alimony arises only as a result of the suit. The distinction is, in this connection, without legal significance. * * * The only essentials to the exercise of the state's power are presence of the *res* within its borders, its seizure at the commencement of the proceedings, and the opportunity of the owner to be heard. Where these essentials exist, a decree for alimony against an absent defendant will be valid under the same circumstances and to the same extent as if the judgment were on a debt—that is, it will be valid not *in personam,* but as a charge to be satisfied out of the property seized.

"* * * The injunction which issued against the bank was as effective a seizure as the customary garnishment or taking on trustee process."

The requirement that the seizure shall be made at the commencement of the proceedings is satisfied when such seizure is made before any adjudication, following reasonable opportunity to be heard, has been reached upon the subject-matter of such proceedings. That is the situation in the present case: the writ was issued at the commencement of that portion of the proceedings which is directed to the fixing of alimony and maintenance.

The circumstance that the defendant is now precluded from questioning the divorce decree is immaterial. His obli-

gation to support his wife and child was not created by the decree; but by the marriage. The decree affects merely the remedy. The question of the *amount* of allowance to be fixed is still open, the question of the wife's *right* thereto not having been in issue at any time.

So far as the constitutional requirement of due process is concerned, the writ was duly issued.

The application of the defendant under his special appearance to set aside the order and the writ is therefore denied.