IRENE M. PIERSON, petitioner,

*v.*

HOWARD W. PIERSON, defendant.

[Decided January 20th, 1937.]

*Messrs. McDonough & McDonough,* for the petitioner.

*Mr. Russell S. Henderson,* for the defendant.

HERR, A. M.

This suit is brought by the wife for divorce for the alleged willful, continued and obstinate desertion of her by her husband for a period of more than two years, commencing on May 4th, 1931.

Prior matrimonial litigation between the parties in this court resulted in the entry of a final decree on December 13th, 1934, dismissing the husband's petition for divorce and granting separate maintenance to the wife (although the proofs showed that she was not entitled thereto on the merits), upon the husband's consent that such decree be made. The decree was affirmed on appeal. *Pierson* v. *Pierson, 119 N. J. Eq. 19; 185 Atl. Rep. 25.*

While the decree did not expressly adjudicate that the defendant, without any justifiable cause, had abandoned his

wife or separated himself from her, such adjudication was implied therein. *Oertel* v. *Oertel, 92 N. J. Eq. 327; 112 Atl. Rep. 487.* In that case it was said that "it is a necessary implication from the decree for alimony [*i. e.,* maintenance] that the court found the fact of abandonment," and if the term "abandonment" be understood as describing that element of the statutory cause of action which is comprehended in the language "in case a husband, without any justifiable cause, shall abandon his wife or separate himself from her," the decree must of necessity have so adjudicated, since such adjudication was jurisdictional.

Although personally served with process in the present suit the defendant defaulted, and the case was referred *ex parte.* On the hearing substantially the same evidence was presented on petitioner's behalf as that presented by her in the earlier litigation. This evidence, undisputed, would have warranted and indeed required the entry of a decree for divorce in petitioner's favor in the present suit, but the court ordered that a defense be made and appointed a solicitor for that purpose, under authority of section 18 of the Divorce act. *P. L. 1907 p. 480 § 18; 2 Comp. Stat. p. 2034; Feickert* v. *Feickert, 98 N. J. Eq. 444, 448; 131 Atl. Rep. 576.* The solicitor so appointed filed an answer denying the allegation of desertion, and by agreement the defense has been presented by stipulating into the present case the evidence taken on the defendant's behalf in the prior proceedings.

Upon the evidence so presented on both sides it is apparent that the separation has not been against the will of the petitioner. The element of obstinacy is lacking. It is sufficient to refer to the opinion filed in the prior proceedings (*119 N. J. Eq. 19*), which summarizes the evidence and points out that since their separation in the year 1931 the wife's attitude toward her husband had been consistent only with a desire to be rid of him. There has been no change in their relations since that time. In short, upon the evidence, there is no doubt that the wife's present petition for divorce should be dismissed.

Petitioner's counsel contends, however, that the court must grant her a decree of divorce, in spite of the fact that the

evidence does not justify it, because the prior decree adjudicated an abandonment: in other words that the decree of December 13th, 1934, is *res judicata* of the fact of the commencement of a willful and obstinate desertion on May 14th, 1931. In support of this contention he cites a number of cases which do unquestionably lend him some aid and comfort but which I do not regard as controlling authority in his favor.

Our reported decisions touching this question fall into two main classes, one where the prior maintenance suit was tried on the merits and the decree rested upon the evidence and not upon consent; the other where the decree was consented to. In the first class are included *Smith* v. *Smith* (*Court of Chancery*), *55 N. J. Eq. 282; 37 Atl. Rep. 49; Lake* v. *Lake* (*Court of Chancery*, not officially reported), *89 Atl. Rep. 534; Scotland* v. *Scotland* (*Court of Chancery*), *96 N. J. Eq. 49; 124 Atl. Rep. 608,* and *Popovics* v. *Popovics* (*Court of Errors and Appeals*), *98 N. J. Eq. 350; 129 Atl. Rep. 126.* In my judgment none of these cases are in point, for the reason that in all of them the prior decrees were based upon evidence. The significance of the distinction will presently be discussed. The *Scotland Case* is out of point for the further reason that there the subsequent proceeding did not seek to secure a decree of divorce, but merely to vacate the earlier decree.

The second class includes *Oertel* v. *Oertel* (*Court of Chancery*), *supra,* in which, as in the *Scotland Case, supra,* the subsequent proceedings sought the vacation of the earlier decree, not a divorce; *Willis* v. *Willis, 99 N. J. Eq. 486; 133 Atl. Rep. 529; affirmed, 101 N. J. Eq. 312; 137 Atl. Rep. 920,* in which the decree recites that the issue of abandonment was "heard on bill, answer, replication and oral proofs in open court," so that it apparently rested upon such proofs rather than upon the consent of defendant's solicitor endorsed thereon, and in which the subsequent suit for divorce was brought by the husband, not by the wife as in the instant suit, so that the application of the *res judicata* rule was directed toward defeating the prayer for divorce rather than in aid of it: and *Holst* v. *Holst* (*Court of Chancery*), *101 N. J. Eq. 682; 139 Atl. Rep. 333,* in which the court examined into

the facts and found that the husband was the deserter and that therefore the prior decree was justified regardless of his consent thereto.

It appears therefore that there is no authority in our books which goes to the extent of holding that this court must, contrary to the evidence, recognize a consent decree for separate maintenance as *res judicata* of the fact of desertion in the wife's subsequent suit for divorce on that ground, and thoughtful consideration of the question has convinced me that such effect ought not to be accorded to the earlier decree under the circumstances here presented, for reasons presently to be discussed.

The practice of entering separate maintenance decrees upon consent is well established, and there certainly can be no objection to the husband's waiver of defenses in such a case. The sole purpose of the suit is to liquidate into a money decree the husband's common law obligation of support. *Adams* v. *Adams, 80 N. J. Eq. 175, 180; 83 Atl. Rep. 190.* See *Maloney* v. *Maloney, 12 N. J. Mis. R. 397, 408; 174 Atl. Rep. 28.* The state has no interest in discouraging the husband from acknowledging his obligation; on the contrary, its interest lies in securing proper maintenance for the wife and children. This can be accomplished effectually by a decree for maintenance, in which the allowance is fixed by the court, or if agreed upon approved by the court, and modified from time to time by the court to fit the changing circumstances of the parties. So long as the effect of such decree is confined to the matter of support there can be no sound reason for declining to rest it upon the husband's consent.

It is quite another matter, however, to give to a decree for maintenance, especially a decree based upon consent only, the effect of a final adjudication that the husband has *deserted* his wife, and to make such adjudication the basis of a subsequent decree for divorce. In my judgment the *res judicata* rule should not be so applied, for several reasons: (1) Where the decree for maintenance is based upon consent only, the public policy that no divorce shall be granted upon the consent of the parties is subverted. (2) Even where the decree is based upon evidence the requirement of corroboration in

divorce suits is avoided. (3) An abandonment as adjudged in the maintenance decree is not always identical with a willful and obstinate desertion.

1. *Divorce by consent.* If the adjudication of an abandonment in a decree for maintenance based upon consent only is to be regarded as *res judicata* of the fact of desertion in a subsequent suit by the wife for divorce for desertion, what is to be said of the fundamental public policy that no divorce shall be granted upon the consent of the parties? Suppose husband and wife both desire to be divorced, but neither has ground. By simply filing a bill for separate maintenance, procuring a consent decree without evidence, and then after the lapse of two years bringing suit for divorce for desertion, in which the husband defaults, is the wife to be permitted to have a decree for divorce by the mere production of the earlier decree for maintenance and proof that since its entry the separation has continued and that the husband has failed to make just advances? The court cannot know that the proceedings amount to a scheme to secure a divorce by consent and upon a fictitious ground, and if the doctrine of *res judicata* is to be applied, is compelled to grant the decree without further proofs. Or suppose the parties be impatient of delay, could they not avoid it by inserting a clause in the consent decree fixing as the time of the alleged abandonment a date two years or more prior to the date of its entry, or by framing the maintenance proceeding as for a constructive abandonment based upon the defendant's alleged adultery (*Suydam* v. *Suydam, 79 N. J. Eq. 144; 80 Atl. Rep. 1057*) or upon the defendant's alleged extreme cruelty as of a date six months before? What impediment would there then be to the filing of the divorce petition immediately after the entry of the consent decree, and to the wife's securing her decree for divorce without evidence of the alleged offense other than the production of the record of the maintenance suit?

It is fundamental and axiomatic in our law that an action for divorce is *sui generis,* in that the state, represented by the court, is a party. *Grant* v. *Grant, 84 N. J. Eq. 81; 92 Atl. Rep. 791.* Divorce based upon mutual consent is contrary to

the public policy. This court is under a peculiar responsibility to forestall all attempts to secure decrees of divorce by collusion and connivance. It is to assist the court in performing this duty that the legislature has clothed it with authority to assign a solicitor for the defendant in uncontested cases. Divorce act, section 18, *supra.*

The interest of the state is not adverse to the granting of a maintenance decree, but where, as in the instant case, it is sought to give to a maintenance decree, based solely on consent and not justified by the evidence, *res judicata* effect in a subsequent suit for divorce brought by the wife, the interest of the state is obviously involved to prevent the granting of a decree of divorce. The state was not a party to the maintenance suit, but it is a party to the divorce suit. How then can the rights of the state in the divorce suit be foreclosed by the decree in the maintenance suit? On what sound principle can the interest of the state be adversely affected by a decree strictly *inter partes?* To allow *res judicata* effect to the earlier decree under such circumstances is to sanction divorces by consent, in contravention of the public policy of the state.

2. *Corroboration in divorce suits.* In another respect the public policy is defeated by the application of the doctrine of *res judicata* in such circumstances, and that is by the avoidance of the requirement of corroboration in divorce cases. Since the maintenance suit is strictly *inter partes,* corroboration is unnecessary. The complainant may secure a decree upon her uncorroborated testimony, even when the husband actively defends, if the court credits her testimony. *Pinkinson* v. *Pinkinson, 92 N. J. Eq. 669; 113 Atl. Rep. 143; Shore* v. *Shore, 96 N. J. Eq. 661; 126 Atl. Rep. 320.* In suits for divorce, on the other hand, public policy requires that there be corroboration of the petitioner's testimony in every essential particular. Such has always been the invariable requirement, so universally applied as to need no citation of authority. If a prior maintenance decree is to be the basis of a subsequent decree for divorce, what becomes of the rule that a decree for divorce can never be predicated upon the uncorroborated testimony of the petitioner? It is true that

if the subsequent suit for divorce be based upon desertion, the petitioner must testify to the *continuance* of the desertion following the maintenance decree, and that her testimony of such continuance must be corroborated (*Zweig* v. *Zweig, 12 N. J. Mis. R. 761; 174 Atl. Rep. 763; affirmed, 116 N. J. Eq. 589; 174 Atl. Rep. 485*), but what of the evidence of the original separation? And where the maintenance decree is based upon a *constructive* abandonment, and therefore amounts to an adjudication of extreme cruelty or of adultery, and the subsequent divorce suit is brought upon one of these grounds, is the court to be compelled to decree a divorce without proof, other than the decree, that the alleged offense was in fact committed? If so, the need for corroboration is eliminated, and the public policy further subverted.

The tendency of the earlier cases was to import into divorce litigation, the *sui generis* nature of which was not fully appreciated, general rules and principles developed in suits strictly *inter partes*. Equitable maxims and defenses crept in. Principles of estoppel both equitable and legal were applied, among them the *res judicata* doctrine, with results that were not always fortunate. In my judgment, such general principles may properly be invoked in working out equity between the parties only so long as the public policy is not defeated thereby, and should never be permitted to operate in such wise as to break down the safeguards which the law has set up to protect the institution of marriage. The more recent tendency of this court has been to decline to apply principles of estoppel in divorce litigation where their application would have such effect. See, for example, *Hollingshead* v. *Hollingshead, 91 N. J. Eq. 261, 263; 110 Atl. Rep. 19.*

3. *Abandonment and desertion distinguished.* In divorce suits based upon desertion, such as the instant case, there is a further objection to the court's blind acceptance of the prior adjudication of abandonment as *res judicata* of the fact of the alleged desertion, and that is that "abandonment" and "willful and obstinate desertion" are not always synonymous terms. To put it more accurately, "in case a husband, without any justifiable cause, shall abandon his wife or separate himself from her" he is not necessarily guilty of a willful and obsti-

nate desertion such as will, after the two years of continuance, constitute ground entitling the wife to secure a divorce. Originally there was a tendency to regard the two causes of action as identical, due no doubt to the fact that the court of chancery was given jurisdiction to decree divorces for desertion as early as the year 1794 (*Pat. Laws 143*), whereas it was not until the year 1818 that the maintenance statute was first enacted. *P. L. 1818 p. 20.* See *Lynde* v. *Lynde, 64 N. J. Eq. 736, 752; 52 Atl. Rep. 694.* Our courts in dealing with the 1794 act had formulated certain notions with respect to desertion which were ready to hand in 1818 and seemed accurately enough to fit the cause of action described in the maintenance statute, which has come to be commonly referred to as "abandonment." But later adjudications under the separate maintenance statute have disclosed certain essential differences between desertion and abandonment, and these differences have their basis in the divergence of purpose between the two statutory provisions, the purpose of the one being to sever or alter the bond of matrimony, of the other merely to make more readily enforceable the wife's common law right to support. In *Weigand* v. *Weigand, 41 N. J. Eq. 202, 209; 3 Atl. Rep. 699; affirmed, 42 N. J. Eq. 699; 11 Atl. Rep. 112,* Vice-Chancellor Van Fleet said that the object of the maintenance statute "is to make the right of the wife to support more secure than it was at common law, by giving her a remedy, whenever her husband fails to perform his legal duty, directly against him, instead of leaving her right in that respect to be wrought out, as it has to be at common law, through a third person. And, in my judgment, the statute should be construed to give a wife a right of action against her husband, whenever she separates from him under such circumstances as will enable a third person to maintain an action against him for necessaries furnished to her."

This view was again approved by the court of errors and appeals in *Dummer* v. *Dummer, 41 Atl. Rep. 149, 150.* And see *Baumgarten* v. *Baumgarten, 107 N. J. Eq. 274, 280; 151 Atl. Rep. 606.* At common law the husband is liable for the support of his wife while the parties are living separate and apart *with the husband's consent. Buttlar* v. *Buttlar, 57*

N. J. Eq. 645, 656; 42 Atl. Rep. 755; Aspinwall v. Aspinwall, 49 N. J. Eq. 302, 303; 24 Atl. Rep. 926; Vusler v. Cox, 53 N. J. Law 516, 518; 22 Atl. Rep. 347; Emery v. Neighbour, 7 N. J. Law 142, 146; Nurse v. Craig, 2 B. & P. (N. R.) 148, 152; 127 Eng. Reprint 581. That the statute was intended to afford a direct remedy to a wife living apart from her husband with his consent is apparent from an examination of its opening words: "In case a husband, without any justifiable cause, shall abandon his wife *or separate himself from her*," &c. Why the addition of the disjunctive phrase if abandonment alone (in the narrow sense of desertion) had been intended? Coupled with this language is the later provision of the statute that "during the time such maintenance shall be allowed by the decree or order of the court, the husband shall not be chargeable with her debts."

It is only by such construction of the statute that the distinctions worked out by the later decisions of our courts can be rationalized. Among such distinctions the following may be pointed out: While a constructive abandonment based upon extreme cruelty has been held to be the same as a constructive desertion based upon the same ground (*Locher* v. *Locher, 112 N. J. Eq. 25, 27; 163 Atl. Rep. 251*), yet a constructive abandonment based upon adultery may be quite different from a constructive desertion based upon adultery: a constructive abandonment may be predicated upon adultery committed anywhere (*Suydam* v. *Suydam, supra*), whereas a constructive desertion cannot be predicated upon adultery unless it was committed within the matrimonial home. *Lake* v. *Lake, 65 N. J. Eq. 544; 56 Atl. Rep. 296,* and cases cited.

Another distinction has developed in cases where a husband has been held guilty of abandonment under section 26 of the Divorce act notwithstanding the mandate of a New York decree *a mensa* forbidding the cohabitation of the parties. *Freund* v. *Freund, 71 N. J. Eq. 524; 63 Atl. Rep. 756; affirmed, 72 N. J. Eq. 943; 73 Atl. Rep. 1117; Tehsman* v. *Tehsman, 93 N. J. Eq. 76; 114 Atl. Rep. 320; affirmed, 93 N. J. Eq. 422: 117 Atl. Rep. 34; Reik* v. *Reik, 101 N. J. Eq. 523; 139 Atl. Rep. 385; affirmed, 103 N. J. Eq. 23; 141 Atl. Rep. 921.* Under like circumstances a desertion under

section 2 of the Divorce act could not exist or persist so long as the New York decree for separation forbids cohabitation. *Kyle* v. *Kyle, 52 N. J. Eq. 710; 29 Atl. Rep. 316; Reibesehl* v. *Reibesehl, 106 N. J. Eq. 32, 38; 149 Atl. Rep. 823.* See *Hofman* v. *Hofman, 108 N. J. Eq. 161, 163; 154 Atl. Rep. 518.*

The fundamental distinction between these two concepts has been more clearly worked out in the later cases, following Vice-Chancellor Van Fleet's statement of the purpose of the maintenance statute (*Weigand* v. *Weigand, supra*), in which the parties have been and have continued to be separated by consent. Obviously, in such circumstances there cannot be a statutory desertion. But there may be an "abandonment" although the separation originated and continued by the consent of the parties. Thus in *Barefool* v. *Barefoot, 83 N. J. Eq. 685; 93 Atl. Rep. 192*, the court of errors and appeals affirmed this court in ordering temporary maintenance in a case in which the husband had consented to his wife's departure from their home. The court said in its opinion in that case: "[the husband's] legal duty to support his wife does not cease by reason of her absence from his home at his instance or with his consent. It is only when he desires her presence in his home that her presence in that home can be made a condition precedent to his obligation of support. Until it is made to appear that the wife's absence from her husband's home is without the husband's co-operation or consent or is against his will, the issue as to whether the husband has by his conduct sacrificed his right to her presence in his home is not a live issue. * * * Should he in good faith seek her return, it may afford a ground for terminating alimony *pendente lite,* but until such time his failure to support her is an abandonment within the purview of our statute, in the absence of evidence that her original departure from his home or her continued absence has been under circumstances and of a nature to relieve him of the obligation of seeking her return. * * * When a wife resides away from her husband with his consent the husband's obligation to support her continues."

In the case of *Segal* v. *Segal, 104 N. J. Eq. 457; 146 Atl. Rep. 189,* the husband separated himself from his wife with

her consent, and thereafter made no *bona fide* effort to effect a reconciliation. The court of errors and appeals held that his leaving, although with the consent of his wife, did not relieve him of the duty to support her, and in the absence of *bona fide* overtures on his part his failure to maintain and provide for her entitled her to a decree for separate maintenance.

These cases define the offense described in the maintenance statute as consisting in the husband's failure or refusal to maintain and provide for his wife *as long as he is under legal obligation to do so,* the extent of such legal obligation being fixed by the statute in the terms of the common law. If the husband consents to the separation he remains liable for the wife's support unless he can show "justifiable cause" for the separation, that is unless he can show that his wife has been guilty of a matrimonial offense. *Dinnebeil* v. *Dinnebeil, 109 N. J. Eq. 594, 596; 158 Atl. Rep. 475; McLean* v. *McLean, 104 N. J. Eq. 208; 144 Atl. Rep. 583.* The law favors the continued cohabitation of the parties, and the husband's consent is not to be deemed justifiable cause for the separation. Nor is the wife's consent thereto justifiable cause, nor does her consent absolve the husband of his duty to maintain her. One qualification must be added to what has just been said respecting "justifiable cause," and that is that while at common law the husband is under obligation to support his adulterous wife until he divorces her (*Whittle* v. *Schlemm, 94 N. J. Law 112; 109 Atl. Rep. 305; Tomkins* v. *Tomkins,* in *Miller v. Miller, 1 N. J. Eq. 386, 391*), our cases deny her relief under the maintenance statute (*Sabbarese* v. *Sabbarese, 104 N. J. Eq. 600, 602; 146 Atl. Rep. 592; affirmed, 107 N. J. Eq. 184; 152 Atl. Rep. 920; Seibert* v. *Seibert (Court of Chancery,* not officially reported), *83 Atl. Rep. 230; Bradbury* v. *Bradbury (Court of Chancery,* not officially reported), *74 Atl. Rep. 150; Piper* v. *Piper, 13 N. J. Mis. R. 68; 176 Atl. Rep. 345.* Such denial may be firmly rested upon the application of the doctrine of unclean hands. It is not a disclaimer of the *jurisdiction* of this court under the statute to afford the wife a direct remedy under all circumstances in which such obligation is imposed upon the husband by the common law.

· Nor is such a liberal interpretation of the statute in conflict with such cases as *Taylor* v. *Taylor, 73 N. J. Eq. 745; 70 Atl. Rep. 323*, and *Pinkinson* v. *Pinkinson, supra,* in which the wife did not claim that the husband had consented to the separation but sought unsuccessfully to justify her separation from him on the ground of his alleged extreme cruelty, or with such cases as *Werpupp* v. *Werpupp, 108 N. J. Eq. 169; 154 Atl. Rep. 424,* in which the wife refused to live with her husband. But if it be thought that these cases cast any doubt upon the disposition of our courts to hold to the broad construction of the statute, such doubt must be set at rest by the more recent pronouncements of the court of errors and appeals in the cases hereinafter noted. In *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529; 162 Atl. Rep. 543,* the suit was brought by a wife who had secured a divorce in this court, for the specific enforcement of an agreement in lieu of alimony. The court said that:

"Our decisions hold uniformly that alimony is a subject specifically committed to the court of chancery and arising from the present or past status of the parties as husband and wife. The jurisdiction not only exists while that relation persists, but by the express language of the Divorce act (*Comp. Stat. p. 2035 § 25*) continues after decree of divorce."

In *Second National Bank* v. *Curie, 116 N. J. Eq. 101; 172 Atl. Rep. 560,* the same court, following the *Apfelbaum Case,* in effect held that a wife who was living separate and apart from her husband without any cause of action for divorce against him, although she should not have been permitted to maintain an action for the specific enforcement of his agreement to maintain her, was entitled nevertheless to a decree for maintenance in this court. The court said:

"We take the view that the agreement in these aspects was in its essence and purpose an agreement for the reasonable and suitable support of the wife according to her station and according to her husband's means and ability to support her, and that it comes therefore under the general class of agreements for maintenance where husband and wife are living apart and, as such, is subject to the control of the court of chancery, but not by way of specific performance. *Apfelbaum*

v. *Apfelbaum, 111 N. J. Eq. 529.* The agreement itself may be regarded by the court as evidential with regard to the amount of money to be paid, though not controlling in that regard."

Still more closely in point is the case of *Aiosa* v. *Aiosa, 119 N. J. Eq. 385; 178 Atl. Rep. 63,* in which the husband and wife were living separate and apart by mutual agreement. On the authority of the *Apfelbaum* and *Curie Cases* the court held that the matter of the wife's maintenance was subject to the control of the court of chancery, as having been specifically committed to this court because arising from the status of the parties as husband and wife.

Again in *Phillips* v. *Phillips, 119 N. J. Eq. 462; 183 Atl. Rep. 220,* a case in which the wife's suit for divorce was pending, the court of errors and appeals makes it clear that it regards the same rule as applicable whether the suit be for divorce or for separate maintenance, that is that in either case the wife's support may be secured to her through the peculiar jurisdiction of this court (aside from decreeing the specific performance of any contract for support) to control the matter. Since the court has no inherent jurisdiction to decree alimony or maintenance (*Freund* v. *Freund, 71 N. J. Eq. 524, 529; 63 Atl. Rep. 756; affirmed, 72 N. J. Eq. 943; 73 Atl. Rep. 1117; Hervey* v. *Hervey, 56 N. J. Eq. 424, 426; 39 Atl. Rep. 762*), it follows that the remedies intended by the court of errors and appeals are those provided by sections 25 and 26 of the Divorce act.

Thus it seems clear that by its most recent pronouncements our court of last resort is adhering to its own earlier views expressed in the *Weigand, Dummer, Barefoot* and *Segal Cases, supra,* and is reaffirming the broad construction of section 26 as affording a remedy where the wife is living separate and apart from her husband with his consent. We are not here concerned with the question whether specific performance is the proper remedy for the enforcement of a husband's contract to support his wife. (As to this, see *Cohen* v. *Cohen* (*Court of Chancery,* not yet officially reported), *188 Atl. Rep. 244*). The only point now made is that the *ratio decidendi* of the recent court of errors and appeals decisions is predi-

cated upon the availability of the remedy afforded by section 26 of the Divorce act where the parties live separate and apart by mutual consent and the husband fails or neglects to make proper provision for his wife.

It is therefore apparent that the cause of action defined by the maintenance statute is essentially different from willful and obstinate desertion as contemplated by section 2 of the Divorce act. *2 Comp. Stat. p. 2024.* How then can it arbitrarily be said that a decree for separate maintenance is *res judicata* of the fact of desertion in a subsequent suit by the wife for divorce on that ground? It may be that the evidence upon which the prior decree is based is such as to warrant a decree for divorce for desertion, given the two-year period of continuance, or that one or more of the facts in issue in the maintenance suit may come into issue in the subsequent divorce suit, and if so the prior adjudication may to that extent constitute an estoppel. To determine these questions the proceedings in the prior suit must be examined. *Zweig* v. *Zweig, supra,* and cases cited therein. But in view of the fundamental distinction between the two offenses, clarified by the more recent cases, how can it longer be maintained that the doctrine of *res judicata,* in its strict sense, can under any circumstances be applied arbitrarily to give a decree for separate maintenance controlling effect in a subsequent suit by the wife for divorce for desertion?

In the case at bar, since the evidence precludes the granting of a decree for divorce, the argument that the petitioner is entitled to such decree in spite of the evidence is in effect an insistence that this court is a mere rubber stamp, impotent to protect the interests of the state and powerless to perform its duty to decline to grant a decree of divorce where the evidence does not justify it. With such a view I cannot agree.

A decree will be advised dismissing the petition.