STATE OF MAINE                                   BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                                  DOCKET NO. BCD-CV-2020-37

DR. DEANNA DORSEY,                    )
                                     )
        Plaintiff,                   )
                                     )       **ORDER GRANTING PLAINTIFF'S**
        v.                           )       **MOTION FOR PARTIAL SUMMARY**
                                     )       **JUDGMENT and DENYING**
NORTHERN LIGHT HEALTH, and           )       **DEFENDANTS' MOTION FOR**
NORTHERN LIGHT EASTERN               )       **SUMMARY JUDGMENT**
MAINE MEDICAL CENTER                 )
                                     )
        Defendants.                  )

INTRODUCTION

This case is about employer liability for employee wages stolen through an email phishing

scam. Plaintiff Dr. Deanna Dorsey ("Dr. Dorsey") brings claims for violations of Maine's Wages

& Medium of Payment Law under 26 M.R.S. §§ 621-A through 636 in Count I, failure to pay the

minimum wage under 26 M.R.S. § 664 in Count II (the provisions implicated in Counts I and II

are hereinafter collectively referred to as the "Wage Payment Laws"), and failure to provide

personnel file documents under 26 M.R.S. § 631 in Count III. The matters presently before the

Court are cross motions for summary judgment under M.R. Civ. P. 56(b). Dr. Dorsey moves for

summary judgment on Counts I and II, and Defendants Northern Light Health and Northern Light

Eastern Maine Medical Center (together, "EMMC") move for summary judgment on all three

Counts.

The Court heard oral arguments on Monday, October 18, 2021. Dr. Dorsey was represented

by Peter Mancuso, Esq. and EMMC was represented by David Strader, Esq. For the reasons

discussed below, the Court GRANTS summary judgment to the Plaintiff on Counts I and II and

DENIES summary judgment to the Defendants on Counts I, II, and III.

1

## STANDARD OF REVIEW

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se.*" *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646 (quoting *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996)).

Summary judgment is appropriate where the parties' statements of material fact and the portions of the record referenced therein "disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400. "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact finder to choose between competing versions of the fact." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773). The Court must view a party's statements of material fact in the light most favorable to the non-movant and draw all reasonable inferences in favor of the same. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897.

To avoid summary judgment for the defendant on certain or all claims, a plaintiff must establish "a prima facie case for each element of the claim for which the plaintiff will bear the burden of proof at trial." *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 902 (Me. 1996). "If the plaintiff presents insufficient evidence on an essential element in her cause of action, such that 'the defendant would . . . be entitled to judgment as a matter of law on that state of the evidence at a trial, the defendant is entitled to a summary judgment.'" *Doyle v. Dep't of Human Services*, 2003 ME 61, ¶ 9, 824 A.2d 48 (quoting *Johnson v. Carleton*, 2001 ME 12, ¶ 11, 765 A.2d 571).

Accordingly, the Court must analyze (i) whether Dr. Dorsey has established facts supporting a prima facie case that EMMC has unlawfully withheld her wages under the applicable

laws, (ii) whether EMMC has established facts supporting its defense to Counts I and II, and (iii) whether EMMC has established facts showing provided Dr. Dorsey with the complete contents of her personnel file.

FACTS[1]

Dr. Dorsey is an anesthesiologist employed by EMMC in Bangor, Maine. (Stip. S.M.F. ¶ 1; Pl.'s Compl. ¶ 1.) She is employed pursuant to a series of written employment agreements and amendments thereto (collectively, the "Employment Agreement") setting forth the amount of her compensation. (Stip. S.M.F. ¶ 2.)

Upon hire, Dr. Dorsey completed a direct deposit form authorizing EMMC to deposit her wages into a designated bank account at USAA Federal Savings Bank via direct deposit. (Stip. S.M.F. ¶ 3.) At the time, EMMC used a Human Resources Information System called "Lawson" to effectuate employee direct deposits. (Stip. S.M.F. ¶ 4.) EMMC required employees such as Dr. Dorsey who opted to be paid via direct deposit to use the employee self-service portal ("ESS") in Lawson to designate where their direct deposit should be paid and to control the specifics of her employee benefits and tax information. (Stip. S.M.F. ¶ 5; Pl.'s Add'l S.M.F. ¶ 23.) By using the ESS portal in Lawson, employees could change their direct deposit destination as they wished. (Stip. S.M.F. ¶ 6.) EMMC employees routinely made changes to their direct deposit information in Lawson. (Defs' Supp'g S.M.F. ¶ 8.)

---

[1] "Documents that are unaccompanied by an authenticating affidavit based on personal knowledge under Maine Rule of Civil Procedure 56(e) should not be considered for purposes of summary judgment." *Emery Lee & Sons, Inc. v. Acadia Ins. Grp., LLC*, 2016 Me. Super. LEXIS 38, *12 (citing *Cach LLC v. Kulas*, 2011 ME 70, ¶ 11, 21 A.3d 1015. "[J]ust because a document is produced by a party-opponent in discovery does not mean the rules of evidence are suspended." *Legal-Ease v. Egdall*, 2020 Me. Bus. & Consumer LEXIS 7, *15. The fact section herein is based on evidence authenticated by affidavits based on personal knowledge; evidence submitted by the parties lacking such authentication has been disregarded.

3

EMMC provided its employees with an initial username and a temporary password to access the ESS in Lawson. (Stip. S.M.F. ¶ 5.) Dr. Dorsey used the temporary password assigned by EMMC for her first sign-in to the ESS, then set her own password and periodically changed it as directed by EMMC. (Stip. S.M.F. ¶ 5.) EMMC does not keep records or otherwise have access to information about employees' ESS passwords. (Defs' Supp'g S.M.F. ¶ 17; Defs' Reply to Add'l S.M.F. ¶ 30.) Dr. Dorsey kept her ESS login information in her cell phone to which she alone had access. (Defs' Supp'g S.M.F. ¶ 18.)

Lawson was hosted by a vendor of EMMC. (Pl's' Supp'g S.M.F. ¶ 10.) The vendor and EMMC maintained the security for Lawson. (Pl's Reply S.M.F. ¶ 11.) Multi-factor authentication was not possible in Lawson; at the time, multi-factor authentication was a best practice, but not a standard practice. (Pl.'s Add'l S.M.F. ¶ 27; Defs' Reply to Add'l S.M.F. ¶ 27.)

Upon being hired, EMMC provided Dr. Dorsey a copy of EMMC's System Policy concerning Information Systems Acceptable Use, which prohibits users from disclosing username and password information to others. (Defs' Supp'g S.M.F. ¶ 2.) Within a few days of starting employment,[2] Dr. Dorsey also signed an Employee Code of Conduct and Confidentiality Statement (the "Statement"). (Defs' Supp'g S.M.F. ¶ 1.) The Statement provides in part as follows:

> As part of my job, I may use, see or hear confidential patient information and confidential organizational information. The information may be spoken, written, on diagnostic equipment, on computer or on tape. I will not obtain, use or give out confidential information unless I need to do so as part of my job. I will follow the Code of Conduct and the EMH/EMMC policies when I obtain, use or give out information.
>
> If I am given or select a username and password for use in computers, voicemail or other electronic information systems at work, I will not tell anyone else what they are. My username and password are the same as my signature and when used they mean that I obtained, used or gave out information. I am responsible for all activities if someone else uses my username and password. I will contact my direct

---

[2] As clarified by EMMC during oral argument.

supervisor or the EMH Security Officer (ext. 7047) immediately if I believe someone else knows my password.

. . .

If I violate the Code of Conduct, or any policy that I should follow in doing my job, I can be disciplined. I can be disciplined for violating confidentiality, or for misusing electronic systems, or forgiving out my password. If I make repeated violations or a serious violation, I can lose my job.

(Defs' Supp'g S.M.F. ¶ 1, Exh. 3 to Dorsey Dep.) The Statement lacks a line for any person other than an employee to sign and is not co-signed by a representative of EMMC. (*Id.*)

As part of her job, EMMC provided Dr. Dorsey a work email address.[3] On Sunday, June 10, 2018, approximately 600 EMMC employees, including Dr. Dorsey, received a phishing email at their work email address purporting to contain an "Important message" from EMMC. (Defs' Supp'g S.M.F. ¶ 3.) The email contained an embedded link. (*Id.* ¶ 5.)[4] Upon clicking the link, the user would be routed to a fraudulent ESS portal mimicking the real ESS portal in Lawson. (*Id.*) The user would then be prompted to enter his or her username and password to access the "Important Message." (*Id.* ¶¶ 5, 16.) After entering the information, the user would be routed to a blank screen. (*Id.* ¶¶ 6, 16.)

The phishing email itself contained a number of fraud indicators, several of which were covered in training provided to Dr. Dorsey. (*Id.* ¶ 4.) These include a stated sender of "Eastern Maine Health Systems," which is not the name of any entity associated with EMMC; a sender email of "mail.notification.alert@comcast.net," which is not an EMMC server address; and a flag indicating it originated from an external source and warning not to click on links to unknown

---

[3] Per EMMC at oral argument.
[4] The text of the fraudulent email read as follows:
Dear Employee:
You have a new Important Message from Employee Portal.
Click here to read
Thank You
(Defs' Supp'g S.M.F. ¶ 4, Polley Aff. Ex. B.)

sources. (*Id.*) The email also listed all its numerous recipients in the "To:" field rather than using BCC and did not include a signature or name of the sender or department. (*Id.*) The link in the email had a URL of "goyeaah.com," which is not an address affiliated with EMMC. (*Id.*) Several of these fraud indicators are also present in some legitimate emails from EMMC, including external source flags in emails relating to training and a large number of recipients listed in lieu of BCC. (Pl.'s Opp. S.M.F. ¶ 4.)

Sometime on June 10 or 11, 2018, Dr. Dorsey opened the phishing email, clicked on the link, and entered her username and password into the fictitious ESS portal.[5] (Defs' Supp'g S.M.F. ¶¶ 16-19; Defs' Opp. S.M.F. ¶¶ 1-3; Stip. S.M.F. ¶ 8). As a result, cyber criminals stole Dr. Dorsey's ESS log-in information. (Defs' Supp'g S.M.F. ¶ 12). On June 12, 2018, cyber criminals used her username and password to log into the real ESS portal in Lawson and change her direct deposit destination from the USAA account belonging to Dr. Dorsey to an account at Green Dot Bank controlled by the cyber criminals. (Stip. S.M.F. ¶ 8). Green Dot Bank is legitimately used by a significant number of EMMC employees. (Defs' Supp'g S.M.F. ¶ 8.) Dr. Dorsey was unaware that cyber criminals had made the change.[6]

Dr. Dorsey worked a regular workweek between June 3 and June 9, 2018 and used accrued vacation days to take a paid vacation between June 10 and June 16, 2018. (Stip. S.M.F. ¶ 7.) On Thursday, June 21, 2018 EMMC deposited her earned wages for the pay period of June 3 through June 16, 2018, totaling $8,432.98, ("Wages") into the Green Dot Bank account now designated in Lawson, but which was controlled by the cyber criminals. (*Id.* ¶ 9.)

---

[5] Dr. Dorsey superficially attempts to dispute these facts on the grounds that she does not recall receiving the email, clicking on the link, and entering her information. Her lack of recall is insufficient to generate a genuine dispute of these facts.

[6] At oral argument EMMC confirmed that Dr. Dorsey was unaware cyber criminals has made the change.

That day, Thursday, June 21, 2018, two physicians at EMMC separately notified the payroll department that they had not received their expected direct deposit. (Defs' Supp'g S.M.F. ¶ 9.) A subsequent investigation by EMMC revealed that a total of eleven employees' ESS credentials, including those of the two physicians and Dr. Dorsey, had been used on Monday, June 11 and Tuesday, June 12 to reroute direct deposit payments to accounts at Green Dot Bank controlled by cyber criminals. (Defs' Supp'g S.M.F. ¶¶ 11, 13-14.) All eleven victims had received the phishing email. (Defs' Opp. S.M.F. ¶ 2.)

EMMC reported the wage theft to the FBI and its own bank but only a small portion of the stolen Wages, totaling $79.65, was recovered and returned to Dr. Dorsey. (Stip. S.M.F. ¶ 10.) On July 11, 2018 Dr. Dorsey demanded EMMC issue her a check for the remainder of the Wages but EMMC refused; she again made this demand by a letter dated September 17, 2018 and again EMMC declined. (*Id.* ¶ 11.)

In or around October 2018, EMMC switched from the Lawson platform to the Infor platform for management of Human Resource Information. (Defs' Reply S.M.F. ¶ 25.) The Infor platform had a greater ability to implement security features, such as multi-factor authentication, than did Lawson. (*Id.* ¶ 26.)

On November 26, 2018, acting through counsel, Dr. Dorsey, requested her personnel file. (*Id.* ¶ 12.) On or about December 10, 2018, EMMC produced documents in response to said request. (*Id.* ¶ 13.) The parties dispute whether EMMC produced all personnel file materials on that date. (*Id.*)

DISCUSSION

Dr. Dorsey's argument is simple: Under Maine law, EMMC must pay Dr. Dorsey for her work. She acknowledges that EMMC attempted to pay her, but cyber criminals diverted EMMC's

direct deposit into an account controlled by them, not her. Thus, she contends, EMMC has not paid her for the work she performed during the relevant pay period. *See Schlear v. James Newspapers, Inc.*, 1998 ME 215, ¶ 6, 717 A.2d 917 ("Payment of minimum wages is mandatory . . . . There is no fraud . . . exception to the requirement for payment."). Maine's wage laws are remedial statutes and are to be liberally construed for the benefit of employees. *Dir. Bur. of Labor Stand. v. Cormier*, 527 A.2d 1297, 1300 (Me. 1987).

To understand EMMC's defense to Dr. Dorsey's wage claims, it is first necessary to understand what EMMC is not arguing.[7] As EMMC explained at oral argument, EMMC is *not* arguing that Dr. Dorsey was negligent or otherwise at fault and is thus disentitled to payment of her Wages. EMMC is also *not* arguing that Dr. Dorsey breached her Employment Agreement with EMMC or otherwise violated an EMMC policy and is thus disentitled to payment of her Wages. Rather, EMMC argues that (i) under the Wage Payment Laws, an employer is permitted to establish the method of payment; (ii) here, the Employment Agreement established the method of payment as direct deposit to an account designated in Lawson through the use of Dr. Dorsey's username and password; (iii) EMMC processed Dr. Dorsey's direct deposit through Lawson, as required by the Employment Agreement; (iv) Dr. Dorsey got exactly what she bargained for; and (v) as a result, EMMC has not violated the Wage Payment Laws. For the reasons discussed below, EMMC's defense is unpersuasive.

## I. EMMC Did Not Pay Dr. Dorsey in Violation of the Wage Payment Laws.

The Wage Payment Laws require employers to "pay in full all wages earned by each employee" at regular intervals not exceeding sixteen days. 26 M.R.S. § 621-A(1). Payment of

---

[7] In its Amended Answer, EMMC asserted unclean hands and other fault-based defenses. At oral argument EMMC clarified and confirmed that it was only pursuing the contract-based defense discussed herein.

8

wages or salary "must be made at the rate previously established by the employer . . . ." 26 M.R.S. § 621-A(5). An employer "may not employ any employee at a rate less than" the minimum wage. 26 M.R.S. § 664(1).[8] Here, EMMC previously established Dr. Dorsey's rate of pay for the two-week period June 3, 2018 through June 16, 2018 as $8,432.98. Because cyber criminals wrongfully changed the destination of direct deposits in Lawson from Dr. Dorsey's USAA Federal Savings Bank account to the cyber criminals' Green Dot Bank account, the $8,432.98 payment EMMC made on June 21, 2018 to compensate Dr. Dorsey for services rendered June 3 through June 16 never made it to Dr. Dorsey (or an account owned and accessed by Dr. Dorsey). Only $79.65 of that payment was recovered and paid to Dr. Dorsey. That sum is substantially less than the rate of pay previously established by EMMC, and less (when spread out over the two-week period in question) than the minimum wage.[9] Accordingly, EMMC violated 26 M.R.S. §§ 621-A(1), 621-A(5), and 664(1), by failing to pay Dr. Dorsey as required.

EMMC contends that contract law, not the Wage Payment Laws, is controlling because it governs the amount and manner of an employee's payment. *See Richardson v. Winthrop School Dep't*, 2009 ME 109, ¶ 7 ("Although section 626 creates a statutory right for former employees to *seek* payment, *entitlement* to payment is governed solely by the terms of the employment agreement."); *see also OfficeMax, Inc. v. Sousa*, 773 F.Supp.2d 190, 234 (D. Me. 2011) (under § 626 the parties' employment agreement "governs how wages are earned and, if specified, when wages are to be paid"). In this case, EMMC argues that even though the direct deposit went to the

---

[8] It would appear that Dr. Dorsey's level of compensation and professional services would justify treating her as a salaried employee, thereby potentially exempting EMMC from the obligations of 26 M.R.S. §§ 621-A(1) and 664. EMMC does not mount any such argument, and neither side submitted any Statements of Material Fact to that effect. Accordingly, the Court need not explore the issue. In any event, 26 M.R.S. §621-A(5) would apply regardless of salaried employee status, and under 29 C.F.R. § 541.603 EMMC's improper deduction of Wages would nullify Dr. Dorsey's salaried employee status for the two week period of time in question.

[9] The Court takes judicial notice that Maine's minimum wage at the time was $10.00 per hour.

cyber criminals, not to Dr. Dorsey, EMMC complied with the terms of the Employment Agreement and hence there are no violations of the Wage Payment Laws.

To make this argument, EMMC first asserts that the Statement is one of the components of Dr. Dorsey's Employment Agreement, and it is therefore an enforceable contract. EMMC next points to the following language of the Statement:

> My username and password are the same as my signature and when used they mean that I obtained, used or gave out information. I am responsible for all activities if someone else uses my username and password.

With that language front and center, EMMC notes that Dr. Dorsey's username and password were used to change the destination bank in her Lawson account, and Dr. Dorsey was contractually responsible for all subsequent activities. When EMMC made its direct deposit on June 21, 2018, so the argument goes, EMMC complied with the Employment Agreement and correctly sent the direct deposit to the bank designated in Dr. Dorsey's Lawson account.  Hence, EMMC complied with the Wage Payment Laws, as legitimately modified in this case by the Employment Agreement between the parties.

According to EMMC, based upon a plain reading of the Statement, which functions as a component of the Employment Agreement, the involvement of cyber criminals is not relevant to the analysis. Under the terms of the contract, Dr. Dorsey is strictly liable for any consequences that flow from the use of her username and password. For this reason, argues EMMC, it is unnecessary to ascribe to Dr. Dorsey any negligence or fault. She agreed to be responsible for the use of her username and password, come what may. EMMC complied with the terms of the Employment Agreement by sending the direct deposit to the cyber criminal's Green Dot Bank

10

account, because that is the destination indicated by the use (albeit fraudulent) of Dr. Dorsey's username and password.

EMMC's argument has several flaws. First, EMMC has not alleged facts in the summary judgment record to establish that the Statement is an enforceable contract. Though EMMC has *stated* it is a contract and contended in oral arguments that it is part of the Employment Agreement, no facts supporting this stance have been provided. EMMC did not countersign the document, nor is there a place for any signature save for Dr. Dorsey's. There is no allegation in the record that the Statement was supported by consideration. Employment itself can function as consideration for covenants, such as noncompetition agreements, between employer and employee. *Brignull v. Albert*, 666 A.2d 82, 84 (Me. 1995); *see also Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 100 (Me. 1984) (holding that parties may carve out an exception to the terminable-at-will rule "even though no consideration other than services to be performed or promised is expected by the employer, or is performed or promised by the employee"). However, Dr. Dorsey was provided and signed the Statement *after* her employment with EMMC had begun, so it cannot have served as a *prerequisite* to her employment. Nor has EMMC alleged or shown that Dr. Dorsey's signature on and agreement to the Statement was an indispensable requirement for *remaining* employed. Without a quid pro quo exchange, the Statement's terms cannot be read on summary judgment as forming a binding contract. In short, EMMC has not met its summary judgment burden to establish facts showing that the Statement is an enforceable contract. But even if it had, EMMC's argument suffers from other problems.

Assuming *arguendo* the Statement is an enforceable component of the Employment Agreement, that it applies to these facts, and that it should be interpreted to mean what EMMC asserts it means, EMMC's argument must fail as a matter of law. It is axiomatic that parties cannot

11

through private contract vitiate statutory requirements. *Snow v. Bernstein*, 2017 ME 239, ¶ 11, 176 A.3d 729 (quoting *Corbin v. Houlehan*, 100 Me. 246, 251, 61 A. 131 (1905) ("It is a fundamental and elementary rule of the common law that courts will not enforce . . . contracts which are contrary to public policy.")). EMMC's reliance on *Richardson* and *OfficeMax* is overextended. In *Richardson*, a school principal's contract explicitly stated that he would be paid for up to thirty days of accumulated vacation time upon retirement. 2009 ME 109, ¶ 2. The principal had accumulated 178 vacation days and demanded payment for the remaining 148 upon his retirement, referring to section 626's "pay in full" language. The court ruled against him, finding that "a former employee may only claim what is owed according to the terms of the employment contract" and that "section 626 does not modify or supersede [those] terms." *Id.* at ¶ 7. Likewise, in *OfficeMax*, the court found section 626 merely allows for the enforcement of an employer's compensation plan by a former employee for all payments, including incentives and bonuses, but does not itself determine specific payments owed. 773 F.Supp.2d at 234. Neither case stands for the proposition that the parties can agree to abrogate the basic provisions of 26 M.R.S. §§ 621-A(1), 621-A(5), and 664. On these facts, the interpretation of the Statement advanced by EMMC would have precisely that effect.

The prohibition against abrogating the fundamental purpose of the Wage Payments Laws is codified in the unfair agreement provisions of 26 M.R.S. § 629. Section 629 states in relevant part that "[a] person, firm or corporation may not require or permit any person as a condition of securing or retaining employment to work without monetary compensation . . . ."[10] 26 M.R.S. § 629(1). Interpreting the Statement in the fashion urged by EMMC, the Court would need to find

---

[10] The remaining portion of 26 M.R.S. § 629(1), which addresses when it is permissible to require an employee to return a portion of her compensation to an employer, is inapplicable since it is the cyber criminals who pocketed the money, not Dr. Dorsey, and EMMC is not asking her to return any portion of the illegally diverted direct deposit.

that Dr. Dorsey agreed to work two full weeks for the sum of $79.65, which is tantamount to working without monetary compensation. Put another way—to more closely hew to the argument proposed by EMMC—the Court would need to find that by signing the Statement, Dr. Dorsey agreed to work two full weeks in exchange for EMMC's direct deposit payment to cyber criminals unknown to and unanticipated by Dr. Dorsey. Even if Dr. Dorsey had so agreed, the agreement would run afoul of 26 M.R.S. § 629 because it would have the effect of requiring or permitting Dr. Dorsey to work without monetary compensation.

In an effort to avoid this conclusion, EMMC protests that there is nothing wrong with an agreement whereby an employee works in exchange for compensation sent not to the employee, but to others. The caselaw which EMMC cites regarding legally withholding wages under section 629 is inapposite because it deals with wages withheld pursuant to legally required or employee-authorized deductions (e.g., taxes, insurance premiums, union dues, debts to the employer or third parties) or by court order (e.g., wage garnishments, child support obligations, etc.). *Id.* § 629(1); *see, e.g. Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369 (5th Cir. 1973) (holding that deductions from paychecks reducing them below minimum wage do not violate minimum wage act if said deductions are repayment of advances to employee or routed to third-party creditors at employee's direction because employee "has had the use of the money for a purpose of his choosing"). In these examples, however, the employee's wages are shunted to other destinations *by* the employee and/or for his or her benefit via legal avenues. They therefore do not apply to the facts of this case, where the direct deposit was illegally diverted *not* by Dr. Dorsey and only for the benefit of the cyber criminals. The gravamen of EMMC's argument is that EMMC fulfilled its contractual obligations to Dr. Dorsey even though cyber criminals perpetrated fraud and used Dr. Dorsey's username and password to line their own pockets. All that matters, EMMC

13

contends, is that Dr. Dorsey agreed in the Statement to a payment arrangement, and EMMC complied with that arrangement. The involvement of the cyber criminals is wholly immaterial. However, such a blindered approach ignores the reality that Dr. Dorsey was not paid for her work. The direct deposit was not sent to Dr. Dorsey nor to an account she chose for her benefit. Accordingly, even if it were otherwise enforceable, the Statement as interpreted by EMMC would constitute an unfair agreement in violation of 26 M.R.S. § 629 and would thus be void as a matter of law. *Lewiston Firefighters Ass'n v. City of Lewiston*, 354 A.2d 154, 163 (Me. 1976) (citing *Pringle v. Gibson,* 135 Me. 297, 195 A. 695 (1937)) ("Contract provisions contrary to public policy are void as nonenforceable.").

At oral argument EMMC summed up its argument by saying that it all comes down to a question of authorization. EMMC maintains that the use of Dr. Dorsey's ESS credentials—even by cyber criminals without Dr. Dorsey's knowledge or consent—to designate her direct deposit information in Lawson was equivalent to her authorized wage payment instructions. EMMC insists that by signing the Statement, and thereby agreeing to strictly accept all responsibility for the use of her username and password, Dr. Dorsey authorized EMMC to send her direct deposit to the cyber criminals, even though Dr. Dorsey, as the victim of fraud, did not know about and never intended that outcome. Such an unreasonable agreement, even if true, would be proscribed by 26 M.R.S. § 629. For all of these reasons, EMMC's argument in defense of Counts I and II is unpersuasive. The Court grants Dr. Dorsey's Motion, denies EMMC's Motion as to Counts I and II, and enters summary judgment in favor of Dr. Dorsey on Counts I and II.

B. Remedies.

Dr. Dorsey has prevailed on Counts I and II of her Complaint. In an action brought by the affected employee to recover unpaid wages, remedies include the amount of the unpaid wages plus

14

a reasonable rate of interest, costs of suit, reasonable attorney's fees, and liquidated damages equivalent to twice the amount of unpaid wages. As to Counts I and II, therefore, the Court awards Dr. Dorsey unpaid wages in the amount of $8,353.33[11] plus reasonable interest, costs of suit, reasonable attorney's fees, and liquidated damages in the amount of $16,706.66. Dr. Dorsey shall submit her calculation of interest, bill of costs, and attorney's fee affidavit within thirty days of this Order.

**II.    There is a Genuine Dispute of Fact Regarding Whether EMMC Provided Dr. Dorsey With the Complete Contents of Her Personnel File.**

In addition to her wage violation claims, Dr. Dorsey alleges EMMC failed to provide her with all her personnel file material upon request as required by law. 26 M.R.S. § 631 (providing employees the right to review and copy "any formal or informal evaluations and reports relating to the employee's character, credit, work habits, compensation and benefits"). The statute clarifies that this is not a closed list and that a personnel file may include other information. *Id.*

Neither party alleges facts regarding Dr. Dorsey's personnel file in their respective statement of material facts. The only reference to the personnel file on the summary judgment record is in the Stipulated Statement of Material Facts in which the parties agree that Dr. Dorsey, through her counsel, requested her personnel file on November 16, 2018 and that on or about December 10, 2018, EMMC produced some documents in response to this request. (Stip. S.M.F. ¶¶ 12-13.) The parties dispute whether said documents constituted all of Dr. Dorsey's personnel

---

[11] This sum is the difference between the $8,432.98 sent to the cyber criminals, and the $79.65 recovered and paid to Dr. Dorsey.

file materials. (Stip. S.M.F. ¶ 13.) Accordingly, the Court denies EMMC's Motion for Summary Judgment on Count III.

CONCLUSION

Based on the foregoing, the entry will be: Plaintiff Dr. Dorsey's Motion for Partial Summary Judgment is GRANTED and Defendants' Motion for Summary judgment is DENIED. Judgment is entered for Dr. Dorsey on Counts I and II in the amount of $25,059.99, plus interest, costs, and attorney fees. Count III survives and remains for trial.

SO ORDERED.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Date: **10/26/2021**

_____
Michael A. Duddy, Judge
Business & Consumer Docket

Entered on the docket:  10/26/2021

16